## ARGUED AND DETERMINED

### IN THE

# SUPREME JUDICIAL COURT

### OF

# MASSACHUSETTS.

---

JOHN S. ELDRED *vs.* ALBERT H. MACKIE & another.
JOSEPH GOODSPEED *vs.* SAME.

Plymouth.    October 16, 1900. — February 27, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

Directions by a contractor for the construction of a building, to a sub-contractor,
who has agreed to do the brick work, to hurry up the work and to make certain
changes not required by the sub-contract, do not create the relation of master
and servant, such directions being incident to the relation of contractor and
contractee.

One, to whom a contract for the brick work of a building is sublet by the con-
tractor for the whole building and who is injured by the falling upon him of a
floor insufficiently supported, cannot recover from the contractor for such inju-
ries under a declaration alleging that he was employed by the defendant and
put to work by him in an unsafe and dangerous place.

TWO ACTIONS OF TORT for personal injuries to the plaintiffs
while in the defendants' employ by the falling of the third floor
of a brick school building in process of erection by the defend-
ants under a contract with the city of Brockton.  Writ dated
October 18, 1899.

The declaration in each of the two cases was as follows:

"And the plaintiff says he was employed by the defendants as a bricklayer on a building known as the Howard School; that it was the duty of the defendants to furnish the plaintiff with a safe and suitable place in which to perform his work, but that the defendants wholly regardless of their duty negligently and carelessly put the plaintiff to work in an unsafe and dangerous place, namely, under a flooring which was heavily loaded with boards and lumber, and improperly supported, that the defendants knew or in the exercise of reasonable care might have known, that the place where the plaintiff was at work was unsafe and dangerous, and that the plaintiff was ignorant of the fact that said place was so unsafe and dangerous, and while in the exercise of reasonable care in every respect, the plaintiff was severely injured by the falling of the flooring and timbers upon his head and body. And the plaintiff says that he was injured solely by reason of the negligence of the defendants in carelessly and improperly loading said flooring and unsafely, imperfectly, and carelessly supporting said flooring under which the plaintiff had been placed at work."

The two cases were tried together, before *Mason*, C. J., and the following facts equally applicable to each appeared:

The written contract between the plaintiffs and the defendants provided that the plaintiffs with two other masons should perform in a "faithful and workmanlike manner . . . all labor in laying all brick work at the Howard School addition . . . including chimneys, heating and ventilating system and any other brick work which may be required to complete the building according to plans and specifications, . . . and to comply with all conditions in the specifications relating to that part of the work included by this agreement. All work to be done to the satisfaction of the Superintendent of Public Property of the City of Brockton." The plaintiffs were to receive "six dollars per one thousand for all brick laid."

It appeared in evidence that these four masons had selected one of their number, William Simmons, as the working manager. Simmons testified that he partly had charge of the work, that the others looked to him to give directions, and that he received orders and directions from no one. The plaintiff, Eldred, was asked whether Simmons was in charge of the work and answered,

" We all did it together " ; and when asked whether he was not the guiding hand replied, " Well, we kind of chose him to go ahead and look out."

The plaintiff, Goodspeed, testified that they worked in harmony with the carpenters, that on that morning no one directed them to go to work on the chimney, that they knew where to go to work of their own accord from time to time. " We took hold to the best advantage and kept it along wherever it was necessary or needed; on the morning [of the accident] we had about an hour's work on the gable and after the gable was finished we went inside on the chimney, there was no other work to do, we either had to go to work on the chimney or go home, and as they were very anxious to have the chimney done, of course it needed no telling from any one ; there was no other place for us to work ; it was necessary for us to work in that particular place and they had been urging us, well, for two or three days, at least, to hurry the chimney along. They took and advised and directed us, a general direction of the whole business."

The plaintiffs, on August 26, 1899, while at work on the second floor, looking for support for a staging for the chimney underneath said third floor, were injured by the fall of the third floor upon them. This floor was supported solely by a prop or shore under the main girder, the girder at the time not being fastened by the iron rods to the truss above. On the floor at the time it fell were one of the defendants and two workmen placing the iron rods in position.

One of the defendants was present practically all of the time and at the time of the accident was on the third floor. He testified that he had charge of the construction of the building generally speaking, and had tried to hurry the masons on their work and had asked them to put on more men. The superintendent of public buildings of the city had requested the defendants to hurry up the job. During the progress of the work, some changes were made in the work not required by the contract, and the plaintiffs were notified of the changes by the defendants and they were made, and the defendants at various times had directed the plaintiffs to hurry up with the chimney. On the day of the accident, the walls were up and all brick work completed except the chimney. There was evidence which was

denied that one of the defendants a short time before the floor fell remarked that the prop was bending; no notice was given to the plaintiffs of the condition of the prop or of the floor.

Evidence was submitted on the question of negligence of the defendants in improperly loading and supporting the third floor.

The Chief Justice instructed the jury as follows:

" The breach of duty which these plaintiffs allege as the ground of their action is that the defendants put them at work in a dangerous place. The court is of the opinion that there is no evidence which would warrant the jury in finding that the defendants put the plaintiffs at work in a dangerous place. Under their contract, they chose their own time and way of doing their work and did not receive from the defendants any specific direction to work in this particular place where the danger was encountered. It consequently becomes necessary to direct a verdict for the defendants."

The jury returned a verdict for the defendants; and the plaintiffs alleged exceptions.

*H. H. Chase*, for the plaintiffs.

*L. E. Chamberlain & E. H. Fletcher*, for the defendants.

MORTON, J. These two cases were tried together. The declaration in each case is the same and alleges in substance that the plaintiff was employed by the defendants, and, being himself in the exercise of due care, was negligently put to work by them in an unsafe and dangerous place, to wit, under a flooring which was heavily loaded with lumber and boards and improperly supported and which fell and injured him. The declarations evidently are drawn on the footing that the relations between the parties were those of master and servant.

The undisputed evidence showed that the defendants had contracted with the city of Brockton to build a brick schoolhouse, and had sublet a portion of the work to the plaintiffs and two other persons under a written contract between them and the defendants. It was provided in this contract that the work should be done by the plaintiffs and their associates " to the satisfaction of the Superintendent of Public Property of the City of Brockton." So far as appears the contract gave the defendants no control over the plaintiffs and their associates but they were at liberty to do the work in their own way and when they chose

so long as they performed their contract. It appeared in evidence that they selected one of their own number, one Simmons, as a working manager, and Simmons testified that " he received orders and directions from no one." The accident occurred while the plaintiffs were on the second floor of the building looking for staging for a chimney on which they were going to work, and was caused by the falling of the third floor. There was no evidence that they were going to work on the chimney, in consequence of any specific orders or directions by the defendants. On the contrary one of the plaintiffs testified that no one told them to go to work that morning on the chimney. He testified, in substance, that they knew where to go to work themselves and that there was no other work for them to do except on the chimney. There was evidence tending to show that the defendants had directed the plaintiffs to hurry up the chimney and for two or three days had been urging them to hurry it along. But this falls far short of showing that the defendants had assumed control of the work and of the plaintiffs and their associates. There was also evidence of other directions by the defendants, and one of the defendants testified that " he had charge of the construction of the building generally speaking," which is what we understand one of the plaintiffs to have meant when he testified that "they [the defendants] took and advised and directed us, a general direction of the whole business." Notwithstanding the directions that were given it seems to us plain that the relation between the parties was not that of master and servant but that of contractors and contractees and that the directions that were given were incident to that relation. It also seems to us clear that there was no evidence to warrant a finding that the plaintiffs were put to work by the defendants in an unsafe and dangerous place. We do not mean to say that if the relation between the plaintiffs and the defendants was that of contractors and contractees the defendants owed the plaintiffs no duty not to expose them to injury by reason of the want of due care on their, the defendants', part while they, the plaintiffs, were doing the work which they had contracted to do. *Curley* v. *Harris*, 11 Allen, 112. But we must deal with the case as it is presented, and as already observed the declarations are drawn on the footing of a relation of master and servant and of the plaintiffs having been

put to work as servants in an unsafe and dangerous place. For reasons given we think that this view cannot be sustained. In regard to *Indermaur* v. *Dames*, L. R. 1 C. P: 274, which is relied on by the plaintiffs, it is to be observed that though the declaration alleges an employment, the plaintiff was required as a condition of recovery to amend his declaration so as to conform to the facts proved.

*Exceptions overruled.*