Syllabus.

---

# Richmond.

CHESAPEAKE AND OHIO RAILWAY COMPANY v. FARROW'S AD-
MINISTRATRIX.

November 22, 1906.

Absent, Buchanan, J.

1. NEGLIGENCE.—Actionable negligence is the omission to use that degree
of care which the law require under the circumstances of the
particular case. The care required to prevent the infliction of
injury is always proportioned to the probability that an injury
will be done under the circumstances which are known to exist,
or from past experience may be reasonably expected to exist in a
particular case.

2. RAILROADS—*Licensees*—"*Flying Switch.*"—It is the duty of a rail-
road company to use reasonable care to prevent injury to licensees
upon its tracks at points known to be in frequent use by such
licensees, but it does not owe to bare licensees—that is, licensees
who are such by the mere tolerance and sufferance of the com-
pany and not by its express invitation—the duty of having a
special lookout established for that purpose, nor is it the duty
of a servant who is on the lookout to disregard a danger signal
requiring his presence elsewhere on the train, in order to keep
a constant lookout for such licensees. Licensees are charged
with the duty of caring for their own safety; and where the
tracks are in frequent use for the passage of trains and the
shifting of cars, and "flying switches" have been made at a par-
ticular place, constantly and daily, for many years, licensees are
charged with knowledge of these facts. It cannot be said to be
negligence, *per se*, to make a "flying switch" under the conditions
existing at the point of injury in this case.

3. NEGLIGENCE—*Last Clear Chance.*—The doctrine of the last clear
chance has no application to the case of a bare licensee who is
injured by stepping immediately in front of a moving train, in
the absence of any evidence that the railroad company knew or
could have known of his position of danger in time to have
averted the accident.

VOL. CVI—18

Error to a judgment of the Corporation Court of the city of Buena Vista in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*R. L. Parrish,* for the plaintiff in error.

*Hugh A. White,* for the defendant in error.

KEITH, P., delivered the opinion of the Court.

This action grows out of the death of Stuart Farrow under the following circumstances: The regular local freight train on the branch line of the Chesapeake and Ohio Railway between Glasgow and Lexington, Va., was engaged at Buena Vista, a station on that road, in shifting the cars that composed the train when it arrived at Buena Vista. In doing this work it became necessary to move four empty box cars from the paper mill over what is known as the transfer track between the Chesapeake and Ohio and the Norfolk and Western railroads. For this purpose the engine to which one car was attached moved up to the paper mill, and was there coupled to the four box cars that were to be moved. This engine with the attached cars then backed out, the train consisting at the time of one box car, then the engine, and then the four box cars, towards which the engine was headed. From the paper mill to the point of the accident which subsequently occurred it is up-grade, and from that point to the station of Buena Vista, in which direction the train was moving, there is a down-grade. When the train thus made up had attained considerable speed, one of the brakemen, who was stationed on the pilot of the engine, cut loose the four empty box cars attached to the front of the engine, and the engine ran on along the main line past the transfer switch, the idea being that the impetus which the four following

cars had attained, aided by the down-grade on which they had to run, would carry them on into the transfer track after they had been detached from the engine, thus making what is known as a "running," "flying," or "gravity" switch.  The evidence shows that this was the usual and only method employed in making the necessary transfer of cars at this station.  The tracks and switches along which this train passed after it left the paper mill are all within the corporate limits of the city of Buena Vista, but neither the main track nor the switches, as far as the facts of this case are concerned, occupy or are crossed by the streets of the city of Buena Vista; but it does appear that the right of way and tracks of the railway company at the point of the accident were constantly used by pedestrians.

It seems that Stuart Farrow was upon the track; that he stepped off in order to avoid the engine which was approaching him from the rear; that as soon as the engine passed he stepped back upon the track, and was almost immediately— after he had taken two steps, according to one eye-witness, and after he had taken eight or ten steps, according to another eye-witness—run over by the box cars which had been detached from the engine, and received injuries from which he died. Upon the front end of the box car next to and following the engine the conductor, a careful and prudent officer of the Chesapeake and Ohio Railway, was stationed, on the lookout to prevent accidents.  A cow got upon the track just in front of the engine and car, and the engineer gave the alarm signal; thereupon the conductor ran to the rear of the car upon which he was stationed in order to apply the brake in obedience to the alarm signal, and just at that moment Stuart Farrow, the engine having passed him, stepped upon the track and received the injury of which he died.

His administratrix brought suit, and the jury upon the demurrer to the evidence rendered a verdict in her favor, upon which the court entered the judgment to which the Chesapeake

and Ohio Railway Company applied for and obtained a writ of error.

"Negligence, constituting a cause of civil action, is such an omission, by a responsible person, to use that degree of care, diligence and skill which it was his legal duty to use for the protection of another person from injury as, in a natural and continuous sequence, causes unintended damage to the latter." Shear. & Red. on Neg. (5th Ed.), section 3.

The degree of care and skill required is influenced and determined by the conditions existing at the time and place of the act under investigation. The duty with respect to the operation of a railroad occupying a street in a populous town, or crossing a street in such a town, or a public highway, requires the exercise of ordinary care. So the duty of a railroad company is to exercise ordinary care in crossing a public highway in a country. In all these cases the duty is expressed by the term, "ordinary or reasonable care to prevent injury," but it means reasonable or ordinary care in the light of all the surrounding facts and circumstances; so that the care required to prevent the infliction of injury is always proportioned to the probability that exists that an injury will be done under circumstances which are known to exist, or from past experience may be reasonably expected to exist in a particular case. A railroad company is not required to anticipate and make provision for trespassers upon its tracks, but after it has discovered a trespasser upon its tracks it must exercise reasonable care to avoid doing him an injury, and if his danger be obvious and imminent, it must use all the means which are available for his protection which are consistent with its higher duties to others. *Seaboard, &c., R. Co.* v. *Joyner,* 92 Va. 354, 23 S. E. 773.

With respect to licensees the law has been, as we think, correctly stated in recent cases decided by this court.

In *N. & W. Ry. Co.* v. *Wood,* 99 Va. 156, 37 S. E. 846, where the plaintiff was standing on the platform of a freight depot and was injured by a freight train that ran against the

platform, Judge Buchanan, delivering the opinion of the court, said: "Being there as a mere licensee, the defendant did not owe him the duty of maintaining its roadbed, switches, and connected appliances in proper condition for running its trains, or of providing and using proper and safe trucks, couplings and machinery on its cars, or of properly inspecting the same; or of employing competent servants to manage its trains, or to run them at a safe and proper rate of speed. The general rule being that a bare licensee—that is, one who is permitted by the passive acquiescence of the railroad company to come upon its depot platform for his own purposes, in no way connected with the railroad—is only relieved from the responsibility of being a trespasser, and takes upon himself all the ordinary risks attached to the place and the business carried on there." In support of the law as thus stated a number of authorities are cited, to which reference is here made.

In *Williamson* v. *Southern Ry. Co.,* 104 Va. 152, 51 S. E. 195, 70 L. R. A. 1007, a licensee had been injured by a train of the defendant company, and it was contended by counsel that while a railroad company may run its trains on a bright moonlight night without lights on its engines, "if there is no moon, or the moon is obscured so as to make the night dark, it must, for the protection of bare licensees, provide its engines with artificial lights, or be held guilty of a failure to perform a legal duty due to such licensees." Speaking to this contention Judge Harrison said: "To maintain this view would destroy the established rule that a railroad company is under no duty to make previous preparation for the protection of mere licensees. For if they must provide lights for their protection on a dark night, it could with equal propriety be urged that on a down grade, which it is here contended so reduced the noise of the train as to destroy its value as notice, the company should be required to substitute other noises as notice of its approach. It could with equal force be contended that its machinery and appliances, other than lights, should be in order, that competent

employees should be provided, and that the speed of its trains should be so regulated as to provide for the increased danger of a dark night to the licensees. Many things could be done which would add to the facility and safety with which bare licensees might, for their own convenience, use the private property of the railroads; but enough has been said to indicate how difficult, if not impossible, it would be to engraft upon the rule mentioned any exception without ignoring the property rights of the railroad company. There is no contradiction in the rule holding that the defendant company must keep a reasonable lookout to avoid injuring bare licensees and at the same time providing that it is under no obligation to furnish lights for its engines on a dark night for the protection of such persons. There is no obligation upon the defendant to do anything to make the conditions more favorable than the natural surroundings make them. · The obligation is not an absolute one to discover the plaintiff, but it is only the duty of using ordinary care to keep a reasonable lookout under the conditions and circumstances existing at the time the point is reached where the licensee may be reasonably expected."

The syllabus to that case is as follows: "A railroad company owes no duty of previous preparation for the protection of mere licensees. Its sole duty is to use reasonable care to discover and not to injure such persons when they may reasonably be expected to be on its tracks at a particular point. The obligation is not an absolute one, but it is only to use ordinary care for their protection under conditions and circumstances as they actually exist at the time and place where the licensee may be reasonably expected."

In the still more recent case of *N. & W. Ry. Co.* v. *Stegall's Admx.,* 105 Va. 538, 54 S. E. 19, this court has held that "A railroad company does not owe the duty of prevision to a bare licensee on its tracks, nor does it owe him the duty of employing competent servants to manage its trains, or to run them in any particular manner, or a particular rate of speed." And

this we understand to be the established law with reference to bare licensees—that is to say, licensees who are such by the mere tolerance and acquiescence of the company, and not by its express invitation; licensees, it may be, who have become such by repeated acts of trespass over the protest and against the will of the railroad company, and in which the railroad company has been compelled silently to acquiesce because of its inability to prevent.

We cannot say that it is negligence, *per se,* for a railroad company to make a "running," "flying," or "gravity" switch, under the conditions existing at Buena Vista. The uncontradicted evidence is that it was the usual and customary mode of transferring cars; that it was under all the circumstances the most expeditious and safest mode of shifting cars; that it had been in use from the time the railroad was constructed, and was done almost every day in the year, and sometimes more than once a day. Upon the front of the box car next to the engine the conductor of the train was stationed, and upon an alarm signal being given by the engineer he went to the rear of that car to apply the brakes, as it was his duty to do. The cases we have cited establish the proposition that it was the duty of the company to use reasonable care to prevent injury to licensees upon its tracks at this point, but it was not the duty of the company to have a special lookout established for that purpose, nor was it the duty of the conductor to disregard the signal of the engineer, which required him to apply the brakes, in order to keep a constant supervision over the track to see that a licensee who had avoided the engine did not fail to turn his head to see that the track was clear before he returned to it. To do so would be to impose upon the railroad company a higher degree of duty than the law imposes, which requires the exercise of ordinary and reasonable care, and would be in direct opposition to the cases of *N. & W. Ry. Co.* v. *Wood,* and *Williamson* v. *Southern Ry. Co., supra.*

While the deceased was a licensee, he was still charged with

the duty to care for his own safety. He was charged with the knowledge that this track was frequently used for the passage of trains and the shifting of cars; and he must be considered as charged with the knowledge of a method of shifting cars which had been in constant and daily use for many years.

The doctrine of the last clear chance has no application to this case. Farrow was not in danger until, the engine having passed, he stepped back upon the track in front of the box cars, and there is no evidence that the defendant company knew, or could have known, of his position of danger in time to avert the accident. On the contrary, the conductor says that he never saw the man until after he had been run over by the cars. He was not seen because, as we have already said, the conductor was at the moment engaged in the performance of a necessary duty— a duty which he could not neglect without danger of collision with the engine and injury to persons and property as the probable consequence.

Upon the whole case we are of opinion that there was no evidence of negligence before the jury, and that the demurrer should have been sustained; and this court will proceed to enter such judgment as the Circuit Court should have entered.

*Reversed.*