## Staunton.

## PETTYJOHN & SONS V. BASHAM.

September 17, 1919.

1. APPEAL AND ERROR—*Weight Attached to Finding of Trial Court.*—
Generally where questions of fact are submitted to the decision
of the trial judge, without the intervention of the jury, his
decision thereof is entitled to the same weight as the verdict
of a jury. But where the jury have been discharged because
of their inability to agree upon a verdict, the decision of the
trial judge upon the same testimony which was submitted to
the jury is not entitled to the same weight as it would other-
wise have had.

2. APPEAL AND ERROR—*Weight Attached to Finding of Trial Court—
Case at Bar.*—The instant case was submitted to a jury, who
being unable to agree upon a verdict were discharged, and by
consent of the parties it was then submitted to the judge of
the trial court upon the evidence which had been adduced before
the jury.

   *Held:* That where there was evidence tending to sustain both the
theory of the plaintiff and of the defendant as to the cause of
the accident by which plaintiff suffered his injury, and a ver-
dict in favor of either could not have been said to have been
clearly against the evidence, or without evidence to sustain it,
the finding of the trial court for the plaintiff on this point
could not be disturbed.

3. TRESPASSERS—*Licenses—Invitees.*—Third persons can only come
upon the permanent premises of another in the capacity of
trespassers, licensees or invitees. But there is a marked differ-
ence between the duties which the occupant of land owes to
trespassers, licensees and invitees, respectively.

4. NEGLIGENCE—*Duty of Occupant or Landowner Towards Tres-
passers.*—Generally, the owner or occupant of the soil does not
owe to a trespasser the duty of prevision, preparation or look-
out, but only the duty not to injure him intentionally or wan-
tonly. If, however, the trespass is of such nature and so fre-
quent as to charge the occupant with notice thereof, and of
the danger likely to ensue to the trespasser, then the owner is
chargeable with the duty of lookout for such trespasser, with

such equipment and appliances as he is then using in the ordinary conduct of his business, but he does not owe him the duty of prevision or preparation.

5. NEGLIGENCE—*Duty of Occupant or Landowner Towards Licensees.* In the case of licensees, the occupant is charged with knowledge of the use of his premises by the licensee, and while not chargeable with the duty of prevision or preparation for the safety of the licensee, he is chargeable with the duty of lookout, with such equipment as he then has in use to avoid injury to him at the time and place where the presence of the licensees may be reasonably expected. The duties of the occupant to the licensee and to the known frequent trespasser are the same, but the licensee is exempt from the responsibilities of a trespasser.

6. NEGLIGENCE—*Duty of Occupant or Landowner Towards Invitees.*— The duties of an occupant of land to an invitee are entirely different from his duties towards licensees or trespassers. The invitee comes by invitation, express or implied, and may reasonably expect to come with safety. The invitation, however, is rarely, if ever, unlimited, and especially when implied, but to the extent of the invitation the occupant owes to the invitee the duty of prevision, preparation and lookout. He must use ordinary care to see that his premises are in a reasonably safe condition for the use of the invitee in the manner, and to the extent, that he has invited their use.

7. NEGLIGENCE—*Invitation or License.*—It is sometimes difficult to determine whether the circumstances make a case of invitation, in a technical sense, or of mere license. Usually, an invitation will be inferred where the visit is of common interest or mutual advantage to the parties, while a license will be inferred where the object is the mere pleasure or benefit of the visitors. The extent of the invitation also is not free from difficulty, where the invitation is implied.

8. NEGLIGENCE—*Invitation or License—Case at Bar.*—In the instant case, plaintiff, an employee of a subcontractor, was injured by a fall caused by the breaking down of an improperly and insecurely constructed scaffold erected by the contractor. The subcontractor had undertaken the plumbing on the building and the contractor had erected the scaffold for the use of its own carpenters in doing work on the face of the building, and it was never intended to be used as a means of access to the roof. Plaintiff was injured while attempting to get upon the roof of the building from the scaffold. There was easy and safe access to the roof through dormer windows. The evidence failed to show that the use of the scaffold by plaintiff for getting upon the roof was for the common interest and mutual benefit of both parties.

*Held:* That plaintiff was a licensee and not an invitee, and was not entitled to recover from the contractor for injuries sustained by him in the fall of the scaffold. The fact that access by way of the scaffold was "easy and convenient" did not warrant the implication of an invitation, when another means of access existed that was perfectly safe, easy and convenient.

9. EVIDENCE—*Weight of—Failure to Except.*—The fact that no exception was taken to testimony simply affected its admissibility, and did not give the testimony any greater weight than it would have had if exception had been taken.

10. USAGES AND CUSTOMS—*Building Trade—Use of Scaffolds—Case at Bar.*—In the case at bar evidence of a custom or usage of the building trade for subcontractors to use scaffolds erected by general contractors was insufficient to establish a usage of trade to the extent and for the purpose of showing that the plaintiff was invited to use a scaffold, upon which he had no work to do, as a means of access to the roof. The evidence did not prove, as the law requires, that there was an established usage or custom, general and notorious in that locality.

11. NEGLIGENCE—*Scaffold—Evidence—Repair of Scaffold After Accident—Case at Bar.*—In the instant case, where a plumber employed by a subcontractor was injured by the fall of a scaffold while attempting to get on the roof from the scaffold, the fact that the scaffold was repaired after the accident is no evidence that it was left in place for the plumbers. The walls of the building had been erected, and the roof was ready for the slate, but there was no evidence that any painting had been done, and it was probable that the repairs were made for the use of the painters or some other workmen who had to stand upon it to do work on the face of the building.

12. NEGLIGENCE—*Scaffold—Evidence—Invitation to Use Scaffold—Case at Bar.*—In the instant case where a plumber employed by a subcontractor was injured by the fall of a scaffold erected by the contractor, an effort was made to prove an invitation to use the scaffold, which was on the south gable of the building, by showing that a similar use had been made of the scaffold on the north gable, with the knowledge and acquiescence of the contractor. But the evidence showed that there was no dormer windows on the north side, from which access to the roof could be had with safety and convenience as there were on the south side, and that if such use was made of the scaffold on the north gable it was reasonably necessary use, and that the scaffold on that gable had stood the test.

Error to a judgment of the Court of Law and Chancery of city of Roanoke in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

o

*Staples & Cocke* and *Wilson & Manson,* for the plaintiffs in error.

*Jackson & Henson* and *A. L. Hughson,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

John P. Pettyjohn & Sons contracted with the owners to build an addition to Hotel Roanoke, in the city of Roanoke. They employed the Roanoke Sheet Metal Company, as a subcontractor, to do the plumbing on the addition, and the plaintiff was an employee of this subcontractor. In the course of the construction of the building the defendants, who were doing the carpenter's work themselves, erected a scaffold along the face of the south gable of the building for the purpose of enabling their workmen to "case" certain window-frames in the gable and to put the cornices thereon. This work had been completed, but the scaffold had not been taken down. The work for which the scaffold was primarily designed did not require the workmen to go beyond the west face of the last window on the west from which the support for the scaffold projected. The supports for the scaffold upon which the floor of the scaffold rested are spoken of by the witnesses as "pudlocks." They were 2x12-inch joists, set on edge, run out of the window, and nailed at the other end to uprights run from the scaffold below. The floor of the scaffold consisted of loose

boards laid on the pudlocks, but not nailed thereto.   This floor extended a short distance beyond the last pudlock.   The carpenter's work on the gable had been completed and the scaffold had proved safe and satisfactory for the purpose for which it was constructed.   The plaintiff came out upon the scaffold through the east window in the face of the gable, walked the length of the scaffold to the west end thereof, and while endeavoring to climb from the scaffold over the eaves on to the roof where his work was to be done, the scaffold gave way and precipitated him to the ground, causing a compound comminuted fracture of one leg and breaking one of his arms.   For this injury, the present action was brought.   The case was submitted to a jury, but, being unable to agree upon a verdict, they were discharged, and, by consent of the parties, it was then submitted to the judge of the trial court upon the evidence which had been adduced before the jury, and the trial court gave judgment for the plaintiff for the sum of $2,000.

The declaration alleged negligence on the part of the plaintiffs in error (1) in the use of defective materials, (2) in the failure to nail the floor of the scaffold, and (3) in the failure properly to construct and brace the scaffold.   The first two of these allegations were abandoned at the hearing in this court.   The plaintiffs in error defended on the ground that they had not been guilty of any negligence in the construction of the scaffold, and, if they had, the defendant in error was a mere licensee who took things as he found them, and they did not owe him the duty of making the scaffold safe for the use made of it by him.

[1, 2]   The evidence is not clear as to how much of the scaffold fell down, and the parties advanced different theories as to how and why it fell.   It is admitted, however, that it fell while the defendant in error was upon it in the discharge of his duties as a plumber.   It was claimed by

the defendant in error that the pudlock was not properly nailed and braced at the end next to the gable, while the plaintiffs in error claimed that the defendant in error fell from the roof to the scaffold, causing the latter to give way, or that he walked out on the ends of the boards of the floor beyond the last pudlock, causing them to tilt and give way, or that his efforts to climb upon the roof from the scaffold caused a lateral pressure upon the scaffold, which the latter was not built to sustain. There was evidence tending to sustain each of these theories, and a verdict in favor of either could not have been said to have been clearly against the evidence, or without evidence to sustain it. The trial court, sitting in the place of a jury, found for the defendant in error, and its finding on this point cannot be disturbed. Generally, where questions of fact are submitted to the decision of the trial judge, without the intervention of a jury, his decision thereof is entitled to the same weight as the verdict of a jury. *Deleware L. & W. R. Co.* v. *Cotten,* 113 Va. 563, 565, 75 S. E. 122. But where the jury have been discharged because of their inability to agree upon a verdict, the decision of the trial judge upon the same testimony which was submitted to the jury is not entitled to the same weight as it would otherwise have had.

[3, 4] The position of the plaintiff in error, however, is that Basham was a mere licensee and assumed the risk of danger from the scaffold if it was defectively constructed. He was not a servant of Pettyjohn & Sons, but of the metal company by whom he was employed. As to Pettyjohn & Sons, he was a mere third person, and third persons can only come upon the permanent premises of another in the capacity of trespassers, licensees or invitees. But there is a marked difference between the duties which the occupant of land owes to trespassers, licensees and invitees, respectively. Trespassers and bare licensees, as a rule, take the

risk of the place as they find it.    Generally, the owner or
occupant of the soil does not owe to a trespasser the duty
of prevision, preparation or lookout, but only the duty not
to injure him intentionally or wantonly.    If, however, the
trespass is of such nature and so frequent as to charge the
occupant with notice thereof, and of the danger likely to
ensue to the trespasser, then the owner is chargeable with
the duty of lookout for such trespasser, with such equip-
ment and appliances as he is then using in the ordinary con-
duct of his business, but he does not owe him the duty of
prevision or preparation.

[5]    In the case of licensees, the occupant is charged
with knowledge of the use of his premises by the licensee,
and while not chargeable with the duty of prevision or
preparation for the safety of the licensee, he is chargeable
with the duty of lookout, with such equipment as he then
has in use to avoid injury to him at the time and place where
the presence of the licensee may be reasonably expected.
The duties of the occupant to the licensee and to the known
frequent trespasser are the same, but the licensee is ex-
empt from the responsibilities of a trespasser.

[6]    The duties of the occupant to the invitee are en-
tirely different.    The latter comes by invitation, express or
implied, and may reasonably expect to come with safety.
The invitation, however, is rarely, if ever, unlimited, and
especially when implied, but to the extent of the invitation
the occupant owes to the invitee the duty of prevision, prep-
aration and lookout.    He must use ordinary care to see that
his premises are in a reasonably safe condition for the use
of the invitee in the manner, and to the extent, that he has
invited their use.    The cases on the subject of the duty to
trespassers, licensees and invitees, respectively, are very
numerous, and there is very little conflict in the holdings.
We cite by way of illustration a few of them from this juris-

diction.    Those from other jurisdictions are too numerous
to cite, but will be found in any well-considered article on
negligence.    Many of them are referred to in the cases
hereinafter cited.  *Seaboard Air Line Ry.* v. *Joyner,* 92 Va.
354, 23 S. E. 773; *Lunsford* v. *Colonial Coal & C. Co.,* 115
Va. 346, 79 S. E. 348; *Walker* v. *Potomac, etc., R. Co.,* 105
Va. 226, 53 S. E. 113, 4 L. R. A. (N. S.) 80, 115 Am. St.
Rep. 871, 8 Ann. Cas. 862; *Norfolk & W. R. Co.* v. *DeBoard,*
91 Va. 700, 22 S. E. 514, 29 L. R. A. 825; *Blankenship* v.
*Ches. & O. Ry. Co.,* 94 Va. 449, 27 S. E. 20; *Ches. & O. Ry.
Co.* v. *Rogers,* 100 Va. 324, 41 S. E. 732; *Norfolk & W. R.
Co.* v. *Wood,* 99 Va. 156, 37 S. E. 846; *Williamson* v. *South-
ern Ry. Co.,* 104 Va. 146, 51 S. E. 195, 70 L. R. A. 1007, 113
Am. St. Rep. 1032; *Chesapeake & O. Ry. Co.* v. *Farrow,* 106
Va. 137, 55 S. E. 569, 10 Ann. Cas. 12; *Nichols* v. *Washing-
ton, O. & W. R. Co.,* 83 Va. 99, 5 S. E. 171, 5 Am. St. Rep.
257; *Richmond & M. R. Co.* v. *Moore,* 94 Va. 493, 27 S. E.
70, 37 L. R. A. 258; *Clark* v. *Fehlhaber,* 106 Va. 803, 56 S.
E. 817, 13 L. R. A. (N. S.) 442.    We express no opinion as
to the rights of house guests or the duties owing to them.

[7]    Upon the evidence, viewed from the standpoint of
a demurrer to the evidence, we must hold that the scaffold
was improperly and insecurely constructed for the use to
which it was put by the plaintiff.    If Basham was a mere
licensee, then he took upon himself the risk of the scaffold
as he found it, and cannot recover, but if he was an invitee,
*and the invitation extended to that use of the scaffold,* then
Pettyjohn & Sons are liable to him for the injury sustained
in consequence of its fall.    But it is sometimes difficult to
determine whether the circumstances make a case of invita-
tion, in a technical sense, or of mere license.    Usually, an in-
vitation will be inferred where the visit is of common in-
terest or mutual advantage to the parties, while a license
will be inferred where the object is the mere pleasure or

benefit of the visitor. *Bennett* v. *Railroad Co.,* 102 U. S. 577, 26 L. Ed. 235. The extent of the invitation also is not free from difficulty, where the invitation is implied.

[8] In the case at bar the evidence fails to show that the use of the scaffold by Basham for getting upon the roof was for the common interest and mutual benefit of both parties. It was built for use in doing work on the face of the gable, and was never intended to be used as a means of access to the roof. There were communicating doors between all the rooms in this part of the building and there were two dormer windows in the roof affording safe, convenient and easy access to the roof at a point not more than three or four feet distant from the point at which the plaintiff would have landed if he had succeeded in his efforts to climb upon the roof from the scaffold. There was no work that the plaintiff could have done while standing on the scaffold. His work was on the roof and not on the gable. If the scaffold was attractive, the plaintiff was not a child, and temptation was not invitation. If simply convenient, the use of it was as a licensee and not as an invitee. The attempted proof of a custom or usage of trade for subcontractors to use scaffolds left in place by the general contractors was unsuccessful; even if it could have affected the result in a case where the use was not necessary. The only testimony on this subject was that of two members of the firm by which Basham was employed at the time of his injury. No foundation was laid as to either of them for proving a general custom or usage of trade, or any knowledge on the part of Pettyjohn & Sons of either a general or special usage in such case. The entire testimony of these witnesses on this subject was as follows:

*D. P. McCann:* "Q. In a case of that kind, where a contractor has entered into a contract to do work or erect a building, and a subcontractor contracts with him to do the

plumbing work, or other portion of the work, I will ask you to state what is contemplated, in a situation of that sort, in reference to who shall furnish the scaffolding that is necessary for the employee of the subcontractor to do the work?

"A. We always use the scaffolds for executing the work that were there."

*D. E. Argenbright:* "Q. What is the custom and what is in contemplation by the parties as to the erection and use of scaffolding in cases of that kind?" This question was objected to, but the objection was overruled. The examination then proceeded.

"A. Most of the work we do is specification work; we work under specifications.

"Q. I asked you what is contemplated by the parties and what is the custom in regard to the use of the scaffolds?

"A. The general contractors generally build the scaffolds or does the scaffolding work."

[9] There was no other testimony on this subject. The fact that no exception was taken to this testimony simply affected its admissibility. It did not give it any greater weight than it would have had if exception had been taken thereto.

[10] This is far from proving a usage of trade to the extent and for the purpose of showing that the plaintiff was invited to use the scaffold upon which he had no work to do as a means of access to the roof. The language of this court in *Southwest Va. M. Co.* v. *Chase,* 95 Va. 50, 57, 27 S. E. 826, 829, is entirely apposite to the situation here. It is said there: "It has been doubted in some cases whether one witness is sufficient to prove a local custom or usage, but it seems now to be settled that a jury may be justified in regarding the usage as established by one witness where it appears that he has full knowledge and long experience

on the subject about which he speaks, and testifies explicitly to the duration and universality of the usage, and is not contradicted. *Robinson* v. *United States*, 15 Wall. 363 [20 L. Ed. 653] ; *Jones* v. *Hoey*, 128 Mass. 584; 1 Greenleaf on Ev., sec. 260 and note. There is nothing in the record to show that this witness, who was an interested party had any such knowledge or experience on the subject as would enable him to prove the custom. Neither does he prove, as the law requires, that it was an established usage or custom, general and notorious in that locality. *Hansborough* v. *Neal, supra* [94 Va. 722, 27 S. E. 593]." The evidence does not establish a custom or usage of business, general and notorious in that locality. As applied to the case at bar, the evidence does not establish anything more than a permissive use of the scaffold, a use as a licensee, or if it can be so extended as to amount to an invitation, the invitation is limited to a use for work to be done while standing on the scaffold. If an invitation is to be implied at all, it is restricted to such a use as was reasonably necessary, and is not extended to uses not contemplated nor reasonably to be expected, though apparently convenient. It would place too great a burden upon the general contractor to hold him responsible for any use of the scaffold that was simply convenient to the plaintiff. In order for the plaintiff to occupy the position of invitee, it must appear that the use was not merely convenient, but reasonably necessary for the work to be done. If it could not have been reasonably anticipated that any such use would have been made of the scaffold, an invitation to make such use will not be implied. Mere convenience is not invitation. There are cases where convenient access is prepared for the use made of it, and in such case the preparation of the convenience amounts to an invitation. Such was the case of *Nichols* v. *Washington, O. & W. Co., supra.* But this case does not belong to that class.

The evidence before us shows that perfectly safe, easy and convenient access to the roof was afforded by two dormer windows, and Basham admitted on his cross examination that such access would have placed him on the roof at a point not more than three or four feet from where he would have landed if he had succeeded in climbing over the eaves. It is true that he seeks to show that access by the dormer windows was not equally as convenient as by the scaffold, and that he "couldn't have gotten to the stack from there." But no amount of reasoning on the subject can overcome the force of his admission that access from the dormer window would have placed him within three feet of the very gable around which he was going to climb. There was no necessity, therefore, for his going upon the scaffold. It may have been a "convenient and easy" mode of access, but it was not reasonably necessary. But it was urged upon us both in the oral argument and in the brief that an invitation to use the scaffold was implied because such use was "an easy, convenient and apparently safe way * * * to reach the roof," and it was insisted that subcontractors and their employees had the right to use the scaffolds "wherever and whenever it is necessary or convenient for them to do so." This right is insisted upon because "this scaffold afforded a convenient and easy method of reaching the roof." The trial court apparently took this view, but we cannot concur therein. The fact that access by way of the scaffold was "easy and convenient" did not warrant the implication of an invitation to so use it, when another means of access existed that was perfectly safe, easy and convenient." No authority is cited for such a position, and we have not been able to find any. Indeed, the cases on somewhat similar questions seem to hold to the contrary. In *Morrissey* v. *Boston & Me. R. Co.* (1918), 230 Mass. 171, 119 N. E. 675, the defendant contracted with

several contractors for the erection of a building. The steel work was to be done by McClintock, Marshall & Co., by whom the plaintiff was employed. The masonry and carpenters' work was to be done by the Pike Company. Masons of the Pike Company left a ladder in place against one of the walls. The plaintiff was ordered by one of the foremen of the Mc-Clintock, Marshall & Co. to go to the roof. He went by way of the ladder, and, getting on the ladder to return, he fell and was injured. Suit was brought against the Boston & Maine Company and the Pike Company. It was held that while the ladder was placed where it was found by employees of the Pike Company, the evidence would not warrant a finding that the plaintiff was invited to use it. There were other ways of reaching the roof, and there was nothing to show that the ladder was placed there for the use of the employees of McClintock, Marshall & Co., and hence the plaintiff did not use it by invitation of the Pike Company, but in using it was merely a licensee.

In *Smith* v. *Trimble* (1901), 111 Ky. 861, 64 S. W. 915, a paper-hanger was injured by stepping onto a balcony leading from an upper porch to an adjacent room, when the balcony fell, precipitating him to the ground. It was not necessary to use this balcony in going to or from the rooms upon which he was at work, but he did use it, without the knowledge or consent of the appellee, for his (appellant's) greater convenience in calling to a fellow-workman below. The court said: "We are of opinion, and so hold, that the appellant, while engaged in that work, was using such parts of the appellee's premises as were *reasonably necessary* to enable him to do his work, was on the premises, under the assurance, in law, by appellee that such parts *so necessarily* used were reasonably safe for the purpose of such use. But beyond that appellee owed appellant no duty greater than to a stranger or trespasser * * * and when appellant,

without invitation or knowledge of the owner, went into or upon other parts of the premises *not necessary for the performance of his labor*, he assumed all the risk of doing so. He was neither required, expected nor allowed to be at the place where he was injured, consequently appellee was under no duty to him to provide a place of safety." (Italics supplied.)

In *Hutchinson* v. *Cleveland Cliff Co.* (1905), 141 Mich. 346, 104 N. W. 698, the plaintiff was employed to cover pipes in the defendant's mill, and fell through an open, unguarded hatchway. His work did not call him nearer than within twenty to forty feet of the hatchway, and he had to step over a steam pipe a foot high from the floor to get there. He had no call to go there and no invitation. His excuse for going there is that it was near night, and he wished to ask the foreman whether he should mix another quantity of plastic. He had seen the foreman go in a northwesterly direction from him and disappear from his sight around a still, a few feet from him. The mill was in operation and was lighted by electricity. Plaintiff testified that the light was dim. He started in the same direction and went around the still, ultimately walking into the trap, which he did not see or notice. The railing had been removed to facilitate the raising of the cumbrous machinery. The foreman was not produced as a witness. It was defendant's contention that it owed no duty to plaintiff, who had not been invited to enter that portion of the mill, and that he was guilty of contributory negligence. It was held that the defendant owed him no duty of protection.

In *Vaughan* v. *Transit Development Co.* (1917), 222 N. Y. 79, 118 N. E. 219, the plaintiff was a motorman of the defendant company. He went into the toilet-room of one of the company's power plants, as had been the custom of himself and other employees of the defendant for years,

without objection from the defendant.   Plumbers had been working just inside the door and had left open a trap-door in the floor.   The plaintiff fell into the opening and was hurt.   It was held that there could be no recovery, as he was there as a licensee only, and that the defendant did not owe to him the duty of active vigilance to see that he was not injured while upon its premises for his own convenience. It was said that the plaintiff was there by permission for his own convenience and his status was that of a bare licensee; that long-continued acquiescence in such use did not become an invitation; and that the law does not so penalize good nature or indifference, nor does permission ripen into right.

In *Ryan* v. *Toop,* 99 N. Y. S. 590, 114 App. Div. 165, a subcontractor for the plastering in the building in process of construction ordered his servant to plaster along a stairway, and he attempted to do so by standing on iron treads on the stairs, which treads were not built or intended to work on, but were to serve merely as a sheathing for stone treads.   One of the treads gave way and the plaintiff was injured.  It was held that the contractor was not liable, as the plaintiff was not there by invitation.

In *Holbrook* v. *Aldrich,* 168 Mass. 15, 46 N. E. 115, 36 L. R. A. 493, 60 Am. St. Rep. 364, the plaintiff, a child under seven years of age, entered defendant's shop with her father, who was going to make a purchase.   She intended to buy some candy, but in the first place accompanied her father to a part of the shop some distance from the candy counter, and went to the coffee-grinder.   He let go her hand to get his money and she went over to the coffee-grinder, put her hand up the spout, out of which the ground coffee came, hoping to get some whole kernels, and lost her fingers.   It was held that the defendant was under no obligation to look out for the child and to see that it did not injure itself by

placing its fingers in the grinder. It was said that the plaintiff was not within the scope of the defendant's implied invitation, and therefore was not entitled to protection against possibility of harm to herself, and that even if she had been buying coffee the rule would have been the same; that the defendant's invitation in that case would have been for due care for the safety of those working in the neighborhood while simply moving about, but it would not have been to look out for or prevent wrongful acts by the plaintiff. Temptation is not always invitation.

In *Maguire* v. *Magee* (Penn. 1888), 13 Atl. 561, Magee was contractor for all the walls, brick work, etc., and had charge of the scaffolding. The residue of the work was done by the owners. All of the workmen, whether employed by Magee or the owners, used the scaffolds to pass from one part of the building to the other. Magee was a laborer, employed by the owners of the building and not by the contractor, and was engaged in painting the crib work on the building. While working on the scaffold he stepped on what proved to be a trap in the scaffold and fell and was injured. The court held that there could be no recovery against the contractor; that the plaintiff was a bare licensee; that the scaffold was of temporary character, and that the defendant did not owe him the duty of having it in a safe condition for his use.

See also *Plummer* v. *Dill,* 156 Mass. 426, 31 N. E. 128, 32 Am. St. Rep. 463; *Kidder* v. *Sadler,* 117 Me. 194, 103 Atl. 159; *Blackstone* v. *Chelmsford Foundry Co.,* 170 Mass. 321, 49 N. E. 635; *Eldred* v. *Mackie,* 178 Mass. 1, 59 N. E. 673.

[11] The fact that the scaffold was repaired after the accident is no evidence that it was left in place for the plumbers. The walls of the building had been erected, and the roof was ready for the slate, but there is no evidence that any painting had been done, and it is probable that the re-

pairs were made for the use of the painters or some other workmen who had to stand upon it to do work on the gable.

[12]    An effort was made to prove an invitation to use the scaffold, which was on the south gable, by showing that a similar use had been made of the scaffold on the north gable, with the knowledge and acquiescence of the defendants.    But the evidence shows that there were no dormer windows on the north side, from which access to the roof could be had with safety and convenience, as there were on the south side, and that if such use was made of the scaffold on the north gable it was a reasonably necessary use, and that the scaffold on that gable had stood the test.

We are of opinion that Basham, the defendant in error, went upon the scaffold as licensee of the plaintiff in error and not as an invitee, and hence is not entitled to recover of the plaintiffs in error for the injury sustained by him in the fall of the scaffold.    The judgment of the Court of Law and Chancery will, therefore, be reversed, and this court will enter judgment for the plaintiffs in error, as that is the judgment which should have been entered by the trial court.

*Reversed.*

SIMS, J., dissenting:

I cannot agree with the majority opinion on the subjects mentioned below.

1. The opinion states that "the evidence fails to show that the use of the scaffold by Basham for getting upon the roof was for the common interest and mutual benefit of both parties.    It was built for the use in doing work on the face of the gable and was never intended to be used as a means of access to the roof.    *    *    .*    The attempted proof of a custom or usage of trade for subcontractors to use scaffolds left in place by the general contractor was unsuccess-

ful * * *." There follows the quotation of extracts from the testimony of *two* witnesses for the plaintiff, both members of the subcontracting firm which employed him, the first question and answer quoted being from the testimony of one of such witnesses, and the second question and answer quoted being from the other of such witnesses. Later on in the opinion, it is said: "The evidence does not establish a custom or usage of business, general and notorious in that locality. As applied to the case at bar, the evidence does not establish anything more than a permissive use of the scaffold, a use as a licensee, or if it can be so extended as to amount to an invitation, the invitation is limited to a use for work to be done while standing on the scaffold."

The opinion also states that the right of the plaintiff to use the scaffold is insisted upon, "because 'this scaffold afforded a convenient and easy mode of reaching the roof.' The trial court apparently took this view, but we cannot concur therein."

It seems plain to me from the record and briefs in the case that the plaintiff did not seek recovery in the trial court, nor did the trial court rest its judgment on the ground that because the scaffold was a convenient and easy mode of access to the roof therefore the plaintiff was an invitee and was not a mere licensee in making such use thereof. The issue on this subject as made by the declaration was distinctly this: That the use of the scaffold in question was "reasonably necessary," and that when the contract between the defendants, the general contractors, and the employers of the plaintiff, the subcontractors, was entered into, and under that contract, "it was contemplated by the parties that the servants of the" (subcontractors, amongst whom was the plaintiff) "who should be engaged in the performance of (the) plumbing work, should use the scaffold * * * whenever it became reasonably necessary

* * *." And it appears throughout the record that the case was tried and decided in the court below in favor of the plaintiff upon that issue.

Now the testimony aforesaid, quoted in the opinion of Judge Burks, was introduced by the plaintiff as tending to show the understanding aforesaid, and that the true construction of the contract between the general and subcontractors was that contended for by the plaintiff, when such contract is read in the light of the custom or usage mentioned. And, as I see it, this testimony was not introduced to prove a mere local custom or usage, but a *general* custom or usage on the subject, prevailing everywhere. And the testimony, in the absence of any objection thereto (and there was none), or of any evidence in any limiting its effect (of which there was none), was amply sufficient to prove such *general* custom or usage. Indeed this is in effect admitted in the concluding brief for the defendant, where it is said: "We submit that while there was evidence tending to show that it was customary for such employees to use such scaffolding when *necessary*, there was no proof at all of such custom attending mere convenence."

As the case comes before us, therefore, with the decision of the trial court in favor of the plaintiff, we must, as I think, regard the fact as concluded that under the contract between the defendants and the employers of the plaintiff, when construed in the light of the general custom or usage of the trade on the subject, it was contemplated by the parties that the plaintiff should use the scaffold in question, as he did, for access to the roof of the building, if it was reasonably necessary for him so to do in the progress of his work thereon as a plumber. That is to say, it must be taken to have been within the contemplation of the defendants when they contracted for the plumbing work with the employers of the plaintiff, that the plaintiff would use the

scaffold as he did, if it became reasonably necessary for him so to do in the progress of such work; and, hence, the plaintiff was in such case an invitee in such use of such scaffold and the consequent duties of reasonable prevision and care to make the scaffold at that place reasonably safe for such use devolved upon the defendants. See note of Judge Freeman to *Griffin* v. *Jackson Light Co.*, 128 Mich. 653, 87 N. W. 888, 92 Am. St. Rep. 551, and there are many other authorities to the same effect.

2. I think, too, that the question whether the use made of the scaffold by the plaintiff as a means of access to his place of work on the roof, was a reasonably necessary use, is concluded in favor of the plaintiff by the decision of the court below.

On this question the evidence is very conflicting.

The evidence for the defendants, it is true, is to the effect that such use was not reasonably necessary, but merely a convenient use. That evidence is in substance that there was only one way of ascent to the roof provided by the defendants for the carpenters employed by them, and also for the plumbers employed by the subcontractors, and that was (in so far as such way is material in this case) through one of the two dormer windows on the west side of the roof over the south gable of the building (such window being the window nearest the valley of the roof, the exit from this window being some distance to the north of the vent or stack-pipe on which the plaintiff was about to place a collar and lower down on the roof than such pipe), thence northward and away from such vent pipe to and up the valley of the roof, on a 2x12 timber with cleats on it, to the comb or ridge of the roof (a still greater distance away from the vent pipe), thence back, southward, on the comb or ridge of the roof until a point was reached immediately above the vent pipe, thence down the steep roof to the vent pipe—a

much longer and more difficult route to travel on the roof than the route by way of the scaffold where the plaintiff was traveling when the accident occurred, and one which, it is apparent from the plan of the building in evidence, was a more dangerous route to travel and would have caused a considerable loss of time of the plaintiff to traverse, as compared with the route which he in fact took, namely, through a window on the east side of the south gable of the building on to the scaffold standing there, which, according to the evidence for plaintiff, was on a level above the sills of the windows in such gable—to-wit, about half-way up on or about the center of such windows—thence along the scaffold westwardly to the cornice on the western edge of the roof over the gable; thence, but a step, over the cornice on to a board that extended along the roof below but within reach of the vent, or stack-pipe, without having to climb up or down, or climb or slide down on the steep roof.

The evidence in the record does not definitely locate the dormer window or the vent pipe aforesaid on the roof, but sufficiently so to indicate approximately the respective routes on the roof aforesaid, the former route being indicated by dotted lines ( . . . . ) and the latter route by dash lines ( _____ ) on the following sketch:

It is true there was testimony for the defendants to the effect that the roof was not steep—that a wheelbarrow

Scaffold

The part of scaffold which fell.

could be rolled about on it; but the testimony for the plaintiff was to the contrary; and the plan of the roof in evidence refutes this contention of the defendants, as will appear from the following tracing from the elevation of such roof as shown from the front of the south gable (on which the location of the scaffold and route of the plaintiff aforesaid are also indicated by the solid and dash lines).

An important question of fact in the case was whether the scaffold was on a level with the bottom sills of the dormer windows in the roof or higher up. This involved the question of whether if the plaintiff had gone through the dormer window, A, shown on the above sketch, he would have reached the roof on the same level as by the scaffold route, the testimony for the defendant being that the scaffold was on the same level as the sills of the south gable and the sills of the dormer windows. But the testimony for the plaintiff was in direct conflict with that of the defendants on that point, and was very positive and definite to the effect that the scaffold level was about half-way up on the south gable windows and that the level thereof when projected around on the roof was the same elevation above the sills of the dormer windows aforesaid.

And just here is the turning point in the case, as I see it, on the question of whether the route or way taken by the plaintiff was a reasonably necessary route to his place of work, namely, the question whether the scaffold was or was not on the same level with the dormer window-sills, for, if so, as contended by the defendants, the plaintiff, by going through the dormer window, A, would have been, when emerging from that window and as he stood on its sill, at its south corner, within three or four feet from a point directly underneath the vent-pipe, and on the same level as he was when he stood on the scaffold at the cornice aforesaid, and he could have thus stepped to the board afore-

said on the roof leading to the vent-pipe and thence reached such pipe as readily as he could have done so by using the scaffold route. But the testimony being in conflict, as aforesaid, on this point, this question of fact is concluded against the defendants by the finding of the court below; so that the fact must be regarded by us as being that by going through the window, A, the plaintiff would not have been within reach of the vent-pipe or of the board on the roof beneath it, but would have had to climb the steep roof from the window-sill to a point within reach of the vent-pipe, and the plaintiff expressly testified on this subject as follows: "* * * when you got out there, the climbing of this steep part of the roof * * * you couldn't make it up there." (Record, p. 30.) And, indeed, the testimony for the defendants is not that the route through the dormer window, A, was that provided for the plaintiff, but the route through the dormer window B, as shown on the sketch above, which, as aforesaid, is a far more circuitous, a farther and more difficult and dangerous route on the roof than that by the scaffold, the latter requiring, as the plaintiff testified, only one step on the roof after reaching it from the scaffold ("just a step on the roof," p. 30, record), and that step being on the board aforesaid, which ran "across there from the mansard" (p. 36, record), by which he would have attained a point directly underneath his place of work and within reach of it by standing there on such board.

And, as tending to weaken the testimony for the defendant to the effect that the dormer window, B, route was provided by them as the route or way to the roof for all workmen on the building, it was shown by the testimony for the plaintiff that the plumbers did not use that way in putting the collars on the vent or stack-pipes, on the roof of the north gable (which preceded the work about which the plaintiff was engaged when the accident occurred), but

used for that work a scaffold there erected. And further: one of the carpenters who had worked on the erection of the building, a witness for the defendants, disclosed in his testimony on cross examination that the scaffold which fell with the plaintiff had been theretofore frequently used by the carpenters, who were employees of the defendants, in descending from the roof. This witness testified that he himself had made such use of this scaffold "many a time." If so used for descending from the roof, no good reason is perceived why the same use of it should not have been made as a reasonably necessary use (and doubtless was made of it), for ascending to the roof by all workmen on the building being at or near that end of the building and having occasion in the progress of their work to go upon the roof. And it would seem that the most ordinary forethought and prevision of the defendants would have led them to anticipate this. Their consequent duty seems to me to have been plain, namely, to have exercised reasonable care that the scaffold in question should have been so constructed as to have been reasonably safe for such use.

3. The testimony for the plaintiff is very explicit on the point as to what the defect was in the construction of the scaffold which caused it to fall with the plaintiff. That was to the effect that it was not braced at all underneath the end of it which fell and that such bracing was reasonably necessary to support the scaffold for the use of it aforesaid by the plaintiff and other workmen as a means of ascent to the roof.

Such being the case as shown by the record, I feel that there was no error in the action of the trial judge in finding for the plaintiff, and I am unwilling to disturb his decision.