# Staunton

## Lunsford's Administrator v. Colonial Coal and Coke Company.

### September 11, 1913.

#### Absent, Keith, P.

1.  Negligence—*Prevision—Licensees—Trespassers.*—The owner of premises does not owe to either trespassers or licensees the duty of prevision, or of keeping his premises in a safe condition. While he must not intentionally or wilfully injure them, the active duty of protection to licensees only arises after such owner knows of their danger, or might have known of it and avoided it by the use of ordinary care.

2.  Infants—*Trespassers.*—The rule that a land owner does not owe to a trespasser the duty of keeping his land in a safe condition applies as well to infants as to adults.

Error to a judgment of the Circuit Court of Wise county in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Bond & Bruce,* for the plaintiff in error.

*Bullitt & Chalkley,* for the defendant in error.

Whittle, J., delivered the opinion of the court.

This is a personal injury action to recover damages for the death of plaintiff's intestate, May Lunsford, ascribed to the wrongful act of the defendant in error, the Colonial Coal and Coke Company, hereinafter referred to as "the

company." The plaintiff brings error to the judgment of the circuit court rendered for the company on a demurrer to the evidence.

The material facts are these: May Lunsford, who at the time of her death was three years and four months old, was the daughter of James Lunsford, a coal miner in the employment of the company, and lived with her parents in a house leased from the company and located in the mining town of Dorchester. The house fronts on a wagon road, beyond which and practically parallel with it at that point is the track of the motor road, which is about forty feet from the house. There was also a wire fence between the house and the motor track which was in a dilapidated condition. There were three houses, including the house occupied by the Lunsfords, in a row on the same side of the motor track, and the families who lived in these houses were in the habit of using a path which crossed the track in front of them for the purpose of going to the commissary and post-office and spring, and the miners to their work. These various places could also be reached by following the wagon road to the stable and thence across the track into the streets of Dorchester, but the path afforded a nearer route and was habitually used for the purposes mentioned by the three families referred to. It moreover appeared that the children of these families were accustomed to use the space between the dwellings and the motor track for a playground; but the track was a recognized place of danger for children, and Lunsford had given his wife instructions to keep their children off the track and had whipped them for going upon it, fearing that they might be run over and killed by the motor which ran along there frequently and at a rate of speed which rendered it extremely dangerous to young children who might be on the track. A small electric wire was strung along the motor poles and used to supply light to the company's barn and

one of its tenant houses. This wire from some cause was weak and had frequently broken and from time to time been repaired in a crude way by any employee of the company who chanced to discover the break; and of its general condition the company had notice.

Shortly before the casualty, which caused the child's death two days later, the wire broke at a point five feet from the path. The details of the accident may best be told in the language of an eye-witness, Mrs. Farbush, who says: "I saw the little boy, the brother of May, take hold of the wire and put the end down against the track and it made a flash. I supposed at the time they had powder there. The little girl then took hold of the wire and stuck it down and there came a flash and set the little girl's clothes on fire. The boy was about six years old."

It thus appears that there was no danger in merely taking hold of the wire; no harm resulted to either child from that cause *per se,* but the injury came when the flash caused by bringing the end of the live wire in 'contact with the rail, set fire to the child's clothes; that was the proximate cause of the accident, a result which could hardly have been foreseen. Moreover, it is not pretended that the children had any business at the point of the accident. They were there in disobedience to the positive orders from their parents, and without the knowledge or consent of the company. They were in no sense invitees, and were trespassers, or at most bare licensees, upon the track. In neither relation did the company owe to plaintiff's intestate the duty of having the place of accident in safe condition. The duty of prevision is not due by the proprietor of premises to either one of those classes.

Speaking generally, the duty owing by the owner "to a trespasser on his premises is to do him no intentional or wilful injury." There must be such notice of the trespasser's danger as would put a prudent man on the alert before the duty of protection arises.

So also with respect to a bare licensee (that is to say one who is permitted by the passive acquiescence of the owner to come on his premises for his own convenience). "He takes upon himself all the ordinary risks attached to the place and the business carried on there." The owner must not intentionally or wilfully injure him, but he owes him the active duty of protection only after he knows of his danger, or might have known of it and avoided it by the use of ordinary care. These principles have been repeatedly announced by this court and are conclusive of the case. *Nichol's Admr.* v. *W. O. &c. R. Co.,* 83 Va. 102, 5 S. E. 171; *N. & W. R. Co.* v. *Wood,* 99 Va. 156, 37 S. E. 846; *Walker* v. *Potomac, &c. R. Co.,* 105 Va. 226, 53 S. E. 113, 4 L. R. A. (N. S.) 80; *Clark* v. *Fehlhaber,* 106 Va. 803, 56 S. E. 817, 13 L. R. A. (N. S.) 442; *Eaton* v. *Moore,* 111 Va. 400, 69 S. E. 366.

In *Walker* v. *Potomac, &c. R. Co., supra* (a turntable case in which an infant was killed), the authorities are reviewed at length, and the court reaches the conclusion that the rule that a land owner does not owe to a trespasser the duty of keeping his land in a safe condition applies as well to infants as to adults.

Upon the whole case, we find no error in the judgment under review, and it must be affirmed.

*Affirmed.*