## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

APPALACHIAN POWER COMPANY v. NANCY LaFORCE,
ADMINISTRATRIX, ETC.

January 14, 1974.

Record No. 8234.

Present, All the Justices.

*Francis W. Flannagan (Woodward, Miles & Flannagan, on brief),*
for plaintiff in error.

*William J. Sturgill (L. Victor McFall, on brief),* for defendant in
error.

SNEAD, C.J., delivered the opinion of the court.

Nancy LaForce, administratrix of the estate of Ricky Lee LaForce,
brought an action against Appalachian Power Company (Appala-
chian) to recover damages for the alleged wrongful death of her 14-
year-old son, Ricky Lee, by electrocution from a wire on a high
voltage transmission structure which was owned and operated by Ap-
palachian. Appalachian's motions to strike plaintiff's evidence were
overruled, and the jury returned a verdict against Appalachian in the

amount of $14,000. Final judgment was entered on the verdict, and we granted Appalachian a writ of error and supersedeas.

The dispositive question is whether the evidence was sufficient to show actionable negligence on the part of Appalachian so as to support the verdict in favor of the plaintiff.

On the afternoon of September 28, 1970, Ricky Lee LaForce, Clyde LaForce (his father) and Roy LaForce (his brother) were hunting for ginseng[1] in a remote, uninhabited and mountainous section of Dickenson County near Trammel. After searching for ginseng together for a few hours, the three separated about 4:30 p.m., and Ricky Lee started off by himself in search of the herb. About 25 minutes later, Roy heard "something like a gun fire" and both Clyde and Roy heard Ricky Lee "holler" from a knoll approximately 40 to 50 yards away. When they reached the top of the knoll, they found Ricky Lee lying unconscious on the ground on his back near a high voltage transmission structure of Appalachian. Ricky Lee never regained consciousness, and he was subsequently pronounced dead of electrocution.

The record shows that the LaForces did not have permission to go upon the property, and that Ricky Lee understood the danger of electricity. The record is silent as to how Ricky Lee came in contact with the energized wire.

The transmission lines in question were located on an Appalachian right-of-way extending 16.6 miles from Fremont to Clinchfield. They were supported by structures or towers having two wooden poles situated 10 feet apart, joined by a 21-foot cross arm 37 feet 6 inches from the ground. The cross arm of each structure carried three uninsulated 69,000 volt "phase" wires 10 feet apart, suspended from insulators 33 inches below the cross arm. Approximately 10 feet above the high voltage "phase" wires were two "static" wires which did not carry electricity but which protected the structures from lightning. The "static" wires were grounded at each pole by bare No. 4 copper wires which were secured to the pole by clips and nails and which ran down the pole into the ground.

Upon investigation after the accident, witnesses found one of the ground wires of the transmission structure involved broken loose at the ground. It appeared to have been hacked in two by a blunt instrument. All of the nails securing the ground wire below the cross

---

1. A woodland herb reputed to have medicinal qualities and used primarily in the Orient.

arm had been pulled out, and the wire hung loose making one spiral turn around the pole. Burned points on the center "phase" wire and the ground wire indicated that they had been in contact. Monitoring devices in Appalachian's transmission substation showed that there had been a disturbance on the Fremont-Clinchfield line at 5:07 p.m. on September 28, 1970, which was approximately the time witnesses stated Ricky Lee was killed.

Appalachian had conducted its semi-annual helicopter inspection of the line from Fremont to Clinchfield on September 24. The inspectors did not observe a loose ground wire but did observe a "flashed" insulator on the structure under which Ricky Lee was found. Carl Witt, a relative of Ricky Lee, testified that he had observed the ground wire to be loose the latter part of August and again in the middle of September when he had been squirrel hunting in the vicinity.

There was evidence that a path ran under the transmission wires near where Ricky Lee was found. Several witnesses testified that they had traveled on this path for many years on the way to Trammel from Hazel Mountain. However, the photographic exhibits do not show a well-defined path.

Appalachian admits that Ricky Lee died from electrical shock and that the ground wire was energized. It argues that Ricky Lee, having no permission to be on the property, was a trespasser or at most a bare licensee to whom no duty of ordinary care was owed.

Mrs. LaForce argues that Appalachian owed her decedent a duty of ordinary care and that Appalachian was negligent in not discovering the defective ground wire and in not repairing it.

In a long line of cases we have held that those engaged "in the production and distribution of electricity are required to use a high degree of care—care commensurate with the danger involved—to prevent injury to others." This is especially true at places where persons have a right to work or may reasonably be expected to go for work, business or pleasure. *Robbins* v. *Old Dominion Power Company*, 204 Va. 390, 396-97, 131 S.E.2d 274, 279 (1963).

Case law in Virginia establishes the duty owed by owners and occupiers of land to invitees, licensees and trespassers. To an invitee the owner or occupant owes the duty of prevision, preparation and lookout as well as the duty of ordinary care to see that the premises are in a reasonably safe condition. *Pettyjohn & Sons* v. *Basham*, 126 Va. 72, 77-78, 100 S.E. 813, 814-15 (1919).

But where the injured party is a trespasser or bare licensee, the company owes him no duty of prevision or of having the place of accident in a safe condition.

> "Speaking generally, the duty owing by the owner 'to a trespasser on his premises is to do him no intentional or wilful injury.' There must be such notice of the trespasser's danger as would put a prudent man on the alert before the duty of protection arises.
>
> "So also with respect to a bare licensee (that is to say one who is permitted by the passive acquiescence of the owner to come on his premises for his own convenience). 'He takes upon himself all the ordinary risks attached to the place and the business carried on there.' The owner must not intentionally or wilfully injure him, but he owes him the active duty of protection only after he knows of his danger, or might have known of it and avoided it by the use of ordinary care." *Lunsford* v. *Colonial Coal Co.*, 115 Va. 346, 348-49, 79 S.E. 348, 349 (1913).

Ricky Lee was on the right-of-way of Appalachian for the purpose of hunting for ginseng. He was either a trespasser or a bare licensee on the property for his own convenience by the passive acquiescence of Appalachian. There was no showing that Appalachian was guilty of intentional or wilful neglect. Appalachian was, therefore, under no duty to anticipate Ricky Lee's presence in this remote, uninhabited area or to keep the land in reasonably safe condition.

The case at bar is distinguishable from *Norfolk Southern Ry.* v. *Fincham*, 213 Va. 122, 189 S.E.2d 380 (1972), where the presence of infant trespassers in a railroad yard became known to the defendant landowner, who was thereafter charged with a duty of ordinary care to the known trespassers.

We hold that the trial court erred in refusing to grant Appalachian's motions to strike plaintiff's evidence because the evidence was insufficient, as a matter of law, to show actionable negligence on the part of Appalachian. Further, since there was no evidence showing how decedent came in contact with the energized wire, causal connection between the alleged negligence of Appalachian and the injury is purely speculative. In view of our conclusion, it becomes unnecessary to discuss certain granted and refused instructions to which error was assigned. The judgment appealed from will be reversed and final judgment entered.

*Reversed and final judgment.*