State v. Wike

In the trial we find no prejudicial error.

No error.

Judges PARKER and ARNOLD concur.

STATE OF NORTH CAROLINA v. JOHN WIKE

No. 7630SC649

(Filed 2 March 1977)

1. Homicide § 15— proof of title to land — inadmissibility in murder trial

In a trial of defendant for the murder of his brother with whom he was having a boundary dispute and the brother's attorney, the trial court's rulings refusing to allow defendant to turn the trial into an action to prove title to the lands where the shooting occurred were proper.

2. Criminal Law § 88— cross-examination of victim's widow — domestic difficulties

In a homicide prosecution in which the victim's widow testified that her husband neither owned nor possessed a firearm on the date of the shooting, the trial court properly refused to allow defendant to cross-examine the widow as to whether she and the victim had been having domestic problems.

3. Homicide § 15— conversation relating to civil litigation — incompetency in murder trial

In a prosecution of defendant for the murder of his brother and the brother's attorney, evidence of a conversation between the deceased attorney and another attorney concerning civil litigation between defendant and his brother was irrelevant and properly excluded.

4. Homicide § 17— testimony admissible as evidence of threat

In a prosecution of defendant for the murder of his brother, testimony by defendant's sister that he told her he would "do like Dallas" and that Dallas, a brother of defendant, had killed another brother was competent as evidence of a prior threat against the brother defendant killed.

APPEAL by defendant from Friday, Judge. Judgment entered 13 March 1976 in Superior Court, HAYWOOD County. Heard in the Court of Appeals 13 January 1977.

Defendant was tried for murder as a result of killing his brother, Thomas Wike, and his brother's lawyer, Stedman Hines.

The State's evidence tended to show that defendant and Thomas Wike had been involved in a boundary dispute for a number of years. The pair lived on a mountain road in rural Swain County. The road followed a mountain stream. Defendant lived upstream from Thomas. On 10 September 1975, Stedman Hines, Thomas and one William Gibson drove from Thomas' house and left their truck on the road near defendant's driveway. They examined the chop marks and painted blazes on trees near the road and then proceeded up a mountain between defendant's driveway and the road. None of them were armed. Hines was in front followed by Thomas with Gibson following Thomas. Defendant suddenly appeared holding a rifle. Thomas said, "Hello Johnny, what do you know?" Defendant mumbled a reply. At that time Hines reached out to shake hands and told defendant, "I'm Stedman Hines, attorney from Bryson City." Defendant replied, "You are lawyer Hines" and then shot Hines in the stomach. Gibson ran away but heard twelve or fifteen more shots. The bodies of Hines and Thomas were found near the scene of the shooting by the investigating officers. Both had died as a result of gunshot wounds.

The State also introduced physical and documentary evidence calculated to shed light on the events that occurred at the crime scene and to illustrate the testimony of its witnesses.

Defendant testified that on the day of the killings, he had gone down to the creek to shoot snakes. He heard voices on the mountainside and thought that children were up there digging ginseng on his property. He went to investigate and saw Hines, Thomas Wike and a stranger. He had known Hines for a number of years. Thomas Wike said, "What do you know?" and defendant replied, "You know it all." Thomas Wike pointed a pistol at defendant and shot at him. Defendant then returned the fire. Hines jumped back in the bushes and was not seen again. Hines, Thomas Wike and the stranger all had guns. The stranger also shot at defendant but Hines did not. Both defendant and Thomas Wike got behind trees and continued to fire at one another. Defendant shot several times. Soon everything was quiet and defendant left the scene to summon help for the others.

The jury returned verdicts of guilty of voluntary manslaughter in each of the two cases and judgments imposing prison sentences were entered.

State v. Wike

*Attorney General Edmisten, by Assistant Attorney General Claude W. Harris, for the State.*

*Pope & Brown, P.A., by Ronald C. Brown, for defendant appellant.*

VAUGHN, Judge.

[1] Defendant testified that the shooting took place on his property. The State did not introduce evidence to contradict that testimony. Nevertheless, defendant brings forward numerous exceptions because the judge would not allow him, in effect, to turn this criminal action into an action to prove his title to the lands where the shooting took place. The judge's rulings were correct and defendant's exceptions are without merit. The judge also properly instructed the jury on the law as it applies to one who, being free from fault, is attacked on his own property.

Defendant contends that the judge did not "instruct the jury concerning the law of accidental killing as it applies to self-defense." The exceptions relating to this contention are not sustained. The judge fully declared and explained the law arising on the evidence in the case. Among other things, he told the jury that if the defendant "acted properly in self-defense, he would not be guilty of any offense on which the court has or will instruct you." The court further instructed the jury that if Hines died by accident, without wrongful purpose or criminal negligence on the part of defendant, defendant would not be guilty of a crime in connection with his death.

[2] In his sixth assignment of error, defendant argues that the court improperly restricted his cross-examination of Stedman Hines' widow. On direct examination, Mrs. Hines, without objection, testified that her husband neither owned nor possessed a firearm on the date of the shootings. The couple had been married for 34 years. On cross-examination she was asked whether she and her husband lived together continuously for the six months immediately preceding that day. She responded in the affirmative. Defendant then asked her whether she and her "husband were having domestic problems during that time." The sustaining of the State's objection to that question is defendant's basis of the assignment of error. We hold that the trial judge was correct when he concluded that the question was improper.

**[3]** Defendant also attempted to offer evidence of a conversation that took place in the courthouse between Hines and another lawyer in connection with the civil litigation involving defendant and Thomas Wike. Defendant contends that the evidence was not properly excluded by the "Dead Man's Statute." Without regard to whether it should have been excluded under that statute, it suffices to say that the subject of the conversation was totally irrelevant to the trial of this defendant and not admissible under any theory.

**[4]** Defendant's sister (as did one of his brothers) testified for the State. The sister testified that she talked with defendant a few days before the killings. Defendant told her that Thomas Wike was "tearing up what he had." Defendant told her that he would, "do like Dallas" and "that would keep him off." Dallas is another brother of defendant. The sister then explained, without objection, that Dallas had killed another brother, Joe. Defendant does not argue that evidence of defendant's prior threats are inadmissible. He argues, instead, that the testimony should not have been admitted because it "does not qualify as a threat on the part of the Defendant." The weight to be given the evidence is for the jury. The jury could reasonably infer that when defendant said he was going to "do like Dallas" he was suggesting that he was going to kill his brother, as did Dallas. The assignment of error is overruled.

We have considered all of the exceptions brought forward and the argument on appeal. We find no prejudicial error.

No error.

Judges HEDRICK and CLARK concur.