**UNITED STATES of America, Plaintiff,**

v.

**Lawrence McCULLOUGH, et al., Defendants.**

**No. 4:94 CR 0202.**

United States District Court, N.D. Ohio, E. Division.

Feb. 22, 1995.

Robert E. Bulford, Jr., Office of the U.S. Atty., Akron, OH, for U.S.

Richard L. Stoper, Jr., Robert J. Rotatori, Sr., Gold, Rotatori, Schwartz & Gibbons, Cleveland, OH, for Lawrence P. McCullough and Mitchell McCullough.

Lee I. Fisher, Thomas J. Grever, Noelle D'Allura, Office of the Atty. Gen., Environmental Enforcement Section, Columbus, OH, for State of Ohio.

Chris Gorman, Michael L. Harned, Office of the Atty. Gen., Criminal Appellate Div., Frankfort, KY, for Commonwealth of Kentucky.

A. Ann Berkebile, Office of the Atty. Gen., Richmond, VA, for Commonwealth of Virginia.

## MEMORANDUM OPINION

DOWD, District Judge.

### I. INTRODUCTION

Defendants, Lawrence McCullough and Mitchell McCullough, are charged in a 29-count indictment with violations of the Lacey Act, 16 U.S.C. § 3371, *et seq.* Lawrence McCullough is charged in nine counts and Mitchell McCullough is charged in twenty-five counts. The charges generally involve defendants' alleged purchase and export of ginseng without the certification and record-keeping required by state law. Upon order of the Court, the government also filed a bill of particulars (Docket No. 15).

Defendants have filed a motion to dismiss the indictment (Docket No. 10). The motion has been fully briefed. (Docket Nos. 16, 17, 19 and 20). In addition, the Court allowed several states to intervene by filing briefs directed to the issue of the constitutionality of their respective state statutes which were implicated in the indictment and the bill of particulars. (Docket Nos. 25, 29 and 32).[1]

For the reasons discussed below, the motion to dismiss the indictment is granted.

1. By Order dated October 26, 1994, the Court granted the government's motion to permit the State of Ohio to intervene. In the same order, the Court granted the Attorneys General of the State of West Virginia and of the Commonwealths of Kentucky, Pennsylvania and Virginia leave to intervene to defend the constitutionality of their respective statutes relating to ginseng

### II. DISCUSSION

The defendants have attacked the indictment and bill of particulars on several grounds which may be summarized as follows:[2] (1) that O.R.C. § 1518.24(C), one of the state statutes upon which the Lacey Act violation is ostensibly predicated, is void for vagueness; (2) that O.R.C. §§ 1518.24(C) and 1518.24(F) unconstitutionally burden interstate commerce; (3) that the indictment is insufficient because it merely asserts a statutory citation for each count without setting forth specific supporting facts; (4) that the bill of particulars improperly amends the indictment; (5) that the Lacey Act, specifically, 16 U.S.C. § 3372(d)(2), is overbroad and unenforceable; and (6) that there is no Lacey Act violation alleged in the various counts of the indictment. In addition, defendants attack the indictment, practically count by count, on several substantive grounds.

The Court could expend a considerable amount of time analyzing and writing about each of defendants' arguments and the government's counter-arguments. However, upon careful review of the materials before it, the Court has concluded that one ground for dismissal raised by the defendants is dispositive, namely, that the indictment must be dismissed because there is no Lacey Act violation. The Court finds that this ground has merit and will, therefore, discuss only that issue.

### A. The Relevant Lacey Act Provisions

Title 16, Section 3372(a)(2)(B) provides:

It is unlawful for any person to import, export, transport, sell receive, acquire, or purchase in interstate or foreign commerce any plant taken, possessed, transported, or sold in violation of any law or regulation of any State.

management. Only Ohio, Kentucky and Virginia appeared.

2. This list is only the Court's summary; it is in no way prioritized or even set forth in the same order as originally presented by the defendants.

Title 16, Section 3372(d)(2) provides, in pertinent part:

It is unlawful for any person to make or submit any false record, account, or label for, or any false identification of any ... plant which has been, or is intended to be transported in interstate or foreign commerce.

The defendants are charged with violating these sections of the Lacey Act as regards their activities relating to ginseng. They argue, however, that ginseng is not a "plant" within the meaning of the Lacey Act.

In Section 3371(h), the Lacey Act defines "plant" or "plants" as:

any wild member of the plant kingdom, including roots, seeds, and other parts thereof (but excluding common food crops and cultivars) which is indigenous to any State and which is either (A) listed on an appendix to the Convention on International Trade in Endangered Species of Wild Fauna and Flora ["CITES"], or (B) listed pursuant to any State law that provides for the conservation of species threatened with extinction.

It is defendants' position that ginseng is excluded from the coverage of the Lacey Act because it is a "common food crop." The government argues that ginseng, although ingested like a food, is actually a medicine, and that even if it is a food, its infrequent use throughout society would not qualify it as "common."

### B. Rules Governing Statutory Construction

The Lacey Act, although completely exempting from its coverage all "common food crop[s]," even those listed on a CITES appendix or considered under State law to be endangered, nonetheless does not define "common food crop." Therefore, the Court must construe the meaning of that phrase to decide whether ginseng, obviously a "plant" in the ordinary sense of the word, is also a "plant" in the Lacey Act sense.

First, the Court observes that "[i]t is an elementary rule of statutory construction that we initially look to the plain language of the statute to determine the meaning of the legislation." *McBarron v. S & T Indus., Inc.,* 771 F.2d 94, 97 (6th Cir.1985). "Statutory words are uniformly presumed, unless the contrary appears, to be used in their ordinary and usual sense, and with the meaning commonly attributed to them." *Caminetti v. United States,* 242 U.S. 470, 485–86, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). Further, the Court must remember the maxim that "where there is an ambiguity in a criminal statute, doubts are resolved in favor of the defendant." *United States v. Bass,* 404 U.S. 336, 348, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971).[3]

The rule of lenity, however, is not applicable unless there is a "grievous ambiguity or uncertainty in the language and structure of the Act," *Huddleston v. United States,* 415 U.S. 814, 831, 94 S.Ct. 1262, 1272, 39 L.Ed.2d 782 (1974), such that even after a court has " 'seize[d] every thing from which aid can be derived' " it is still "left with an ambiguous statute." *United States v. Bass,* 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971) (quoting *United States v. Fisher,* 2 Cranch 358, 386, 2 L.Ed. 304 (1805)). "The rule [of lenity] comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers." *Callanan v. United States,* 364 U.S. 587, 596, 81 S.Ct. 321, 326, 5 L.Ed.2d 312 (1961).

*Chapman v. U.S.,* 500 U.S. 453, 463, 111 S.Ct. 1919, 1926, 114 L.Ed.2d 524 (1991).

---

3. The Supreme Court has stated that

[t]his principle is founded on two policies that have long been part of our tradition. First, "a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear." *McBoyle v. United States,* 283 U.S. 25, 27, 51

S.Ct. 340, 341, 75 L.Ed. 816 (1931) (Holmes, J.).... Second, because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity.

*United States v. Bass,* 404 U.S. at 348, 92 S.Ct. at 522–23 [internal footnote and citation omitted].

## C. Application of the Rules of Construction to This Case

The simple fact is that, if ginseng is a "common food" within the meaning of the Lacey Act, Congress has exempted it from the coverage of the Act. The analysis is twofold: (1) whether ginseng is a "food" and, (2) whether it is "common."

As noted above, defendants assert that ginseng is a common food and the government argues that it is a medicine or, if it is a food, it is not common.

The starting point is the language of the statute. However, the "plain meaning" of "common food crop" is not as plain as one might think.

It is frequently difficult to draw a line between food and medicine because, obviously, food has a great deal to do with one's overall health and, in that sense, is "medicinal." It is true that every possible substance that is ingested is not necessarily a "food." For example, an aspirin, though ingested, is clearly a medicine and not a food. Also, although some small children enjoy eating their school paste, no one seriously considers paste a food. On the other hand, just because an ingested substance may have medicinal value, does not mean that it is not a food. For example, a person might occasionally drink prune juice, undoubtedly a food, for reasons other than nutrition. Similarly, although some people eat chicken soup when they have a bad cold because it makes them feel better, this does not convert chicken soup from a food into a medicine.

At first blush one would think, as Congress obviously did when it enacted the Lacey Act, that everybody would know the plain meaning of "food." However, it cannot be disputed that different peoples and different cultures (and even sub-cultures) eat different things. So, what is the plain meaning of "food"?

**4.** This is, of course, accomplished by providing the body with foods which, when taken together, constitute proper nutrition. TNID defines "nutrition" as "the sum of the processes by which an animal or plant takes in and utilizes food substances, in animals typically involving ingestion, digestion, absorption, and assimilation."

### 1. Is Ginseng a Food?

Webster's *Third New International Dictionary* ("TNID") serves as an ideal starting point for answering the question.

TNID defines the following words:

*food*—a material consisting of carbohydrates, fats, proteins, and supplementary substances (as minerals, vitamins) that is taken or absorbed into the body of an animal in order to sustain growth, repair, and all vital processes and to furnish energy for all activity of the organism.

*medicine*—a substance or preparation used in treating disease.

These definitions suggest what the Court believes to be the average person's understanding of these two words: food is a substance ingested for purposes of carrying on daily activities, staying healthy and avoiding or preventing illness,[4] whereas medicine is a substance ingested to cure or control illness. Even a medicine that appears to be preventive (for example, medication for hypertension) is actually being used to treat an *existing* condition; all that is prevented by the medicine are the condition's recurring symptoms. Generally speaking, in order to be useful to the body, foods have to be digested, that is, converted into an absorbable form. Medicine on the other hand is generally immediately absorbable, perhaps needing only to be dissolved (as when taken with water).

TNID defines "ginseng" as "a North American woodland herb." "Herb" is defined as "a plant or plant part valued for its medicinal, savory, or aromatic qualities." It is apparent that ginseng root, in order to be utilized by the body, needs to be "converted into an absorbable form."[5] This makes it

**5.** "Chemists have isolated biologically active compounds called saponin ginsenosides in ginseng. Some of these compounds resemble the steroid hormones secreted by the adrenals in times of stress." *American Ginseng: Green Gold of Ohio's Woodlands*, Docket No. 10, Exhibit A, p. 5. In order to be utilized by the body, these compounds obviously must be released through digestive processes.

more like a food than a medicine, notwithstanding its medicinal value.[6]

Defendants have supplied numerous exhibits to their motion to dismiss which discuss ginseng in general. When these are read in their entirety, one is left with the distinct impression that many people throughout the world, particularly in the Orient, ingest ginseng root because they are convinced of its medicinal *and* nutritional value.

The Ohio Department of Natural Resources recognizes that ginseng "can be sliced and chewed raw, mixed with other herbs, cooked in soup, taken as a tea, or put in a liquor or wine[.]" *American Ginseng: Green Gold of Ohio's Woodlands*, Docket No. 10, Exhibit A, p. 5. Ginseng is also recognized as being used in beer, soup and tea. *See, Wisconsin Ginseng Reporter*, Docket No. 10, Exhibits D and E; *American Ginseng in America*, The American Ginseng Society, Docket No. 10, Exhibit F.

Several federal regulations also make references to ginseng which are instructive here. In 40 C.F.R. § 180.34, the Environmental Protection Agency ("EPA") regulates "tolerances and exemptions from tolerances for pesticide chemicals in or on raw agricultural commodities." For purposes of this regulation, the EPA groups various crops. One such group is the "root and tuber vegetables group" which includes not only ginseng but also other crops which are unquestionably "foods," for example, artichoke, beet, carrot, ginger, horseradish, parsley, parsnip, potato, radish, rutabaga, sweet potato, turnip, and yam. The regulations list ginseng in several places where tolerances for various specific pesticides are given, for example, 40 C.F.R. § 180.153 (Diazinon), 40 C.F.R. § 180.399 (Iprodione), 40 C.F.R. § 180.408 (Metalaxyl), 40 C.F.R. § 180.415 (Aluminum tris (O-ethylphosphonate)), and 40 C.F.R.

§ 185.3750 (Iprodione). In each of these regulations, ginseng is listed as a "raw agricultural commodity."

The only reference to ginseng as a "drug" is found in 21 C.F.R. § 310.528, where the Food and Drug Administration ("FDA") regulates "drug products containing active ingredients offered over-the-counter for use as an aphrodisiac." The regulation lists "ginseng" and "Korean ginseng" as "hav[ing] been present as ingredients in such drug products."

The Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, *et seq.*, defines "drug" in several ways one of which is "articles (other than food) intended to affect the structure or any function of the body of man [sic] or other animals[.]" 21 U.S.C. § 321(g)(1)(C). This same statute defines "raw agricultural commodity" as "any food in its raw or natural state, including all fruits that are washed, colored, or otherwise treated in their unpeeled natural form prior to marketing." 21 U.S.C. § 321(r).

Taking all of the above into consideration, the Court is led to conclude that within the plain meaning of the Lacey Act, ginseng is a "food" notwithstanding the fact that some people believe it to have medicinal qualities.[7]

*2. Is Ginseng Common?*

The government also argues that ginseng, even if considered a food, can hardly be called "common," as in "common food crop." On this point, the Court agrees with the defendants that the simple fact that most "Americans of white, anglo-saxon heritage" may not consider ginseng a staple food, does not alter the reality that many other persons, in the United States and world-wide, consid-

---

**6.** "[W]ho can dispute that our cells, tissues, organs, and bodies are made up of what we put through our digestive system and what we assimilate. The conditions of our digestive track [sic] and our life style have a great bearing on what we assimilate, such as our rest, recreation, exercise, attitude, and other factors in addition to the kind of food we eat. American Ginseng is one of the most valuable foods that we could put into our bodies to make good, healthy cells.... Ginseng had been used hundreds of years before Hippocrates who was considered the "Father of Medicine," and the originator of the Hippocrates

[sic] Oath. It was he who said, 'Let food be your medicine and medicine be your food.' " *American Ginseng in America*, The American Ginseng Society, Docket No. 10, Exhibit F, p. 86.

**7.** *See, American Health Products Co. v. Hayes*, 574 F.Supp. 1498 (S.D.N.Y.1983) (construing the meaning of "food" under the Federal Food, Drug, and Cosmetic Act as not encompassing "starchblocker" pills derived from white northern beans).

er ginseng to be a regular and necessary part of their diet.[8]

Although this Court has not found a single instance in the case law, published or unpublished, where a person has been prosecuted under the Lacey Act for violations relating to management of ginseng by states, it has found several general references to ginseng which show that it is a medicinal food and that it is quite commonly cultivated and grown as a food and as a money raising crop. *See, e.g., In the Matter of Disciplinary Proceedings Against Mark X. VanCura,* 178 Wis.2d 612, 504 N.W.2d 610, 612 (1993) (reference to a "ginseng growing operation" and a "ginseng crop"); *McCoy v. Hines,* No. 518, 1992 WL 188480, at *3 (Ohio App. July 28, 1992) (reference to "gatherers of mushrooms and ginseng"); *Bailey v. Lancaster,* 470 N.W.2d 351, 354 (Iowa 1991) (reference to ginseng as "dug, dried, and sold [for] export[ ] to the Orient where it is used as a medicine"); *Arndt Enterprises, Inc. v. Wisconsin Dept. of Revenue,* No. 90–0748, 1991 WL 29003, at *1 (Wisc.App. Jan. 31, 1991) (reference to "ginseng farmers" and growing ginseng "as a commercial crop"); *Falcon, Ltd. v. Corr's Natural Beverages, Inc.,* 173 Ill.App.3d 291, 123 Ill.Dec. 41, 43, 527 N.E.2d 504, 506 (1988) (reference to "chocolate and ginseng flavored beverages"); *Moore v. State of Indiana,* 515 N.E.2d 1099, 1101 (Ind.1987) (reference to "ginseng, a medicinal herb indigenous to the area"); *Leigh v. Lynch,* 112 Ill.2d 411, 98 Ill.Dec. 19, 22, 493 N.E.2d 1040, 1043 (1986) (reference to "such crops as asparagus, ginseng or other perennials"); *Walthall v. County of Wadena,* No. 9843, 1985 WL 3185, at *3 (Minn.Tax Mar. 20, 1985) (tax appraiser indicated a willingness to classify petitioner's land as "agricultural" if his "growing of ginseng" ever increased to a level where it would be more than experimental); *State of North Carolina v. Wike,* 32 N.C.App. 475, 232 S.E.2d 844, 845 (1977) (reference to children "digging ginseng" on defendant's property); *State of Missouri v. Miller,* 536 S.W.2d 524, 525 (Mo.App.1976) (reference to "ginseng root business"); *Appalachian Power Co. v. LaForce,* 214 Va. 438, 201 S.E.2d 768, 769 (1974) (reference to ginseng as "a woodland herb reputed to have medicinal qualities"); *Campbell Brown & Co., Inc. v. Elkins,* 141 W.Va. 801, 93 S.E.2d 248, 265 (1956) (historical references to trading in "furs and ginseng").

It is quite apparent from these references that ginseng is grown, harvested and used in this country with sufficient frequency to be considered a "common" food.

## III. CONCLUSION

In view of the above discussion, the Court concludes that because ginseng is not a "plant" within the meaning of the Lacey Act, that is, because it is expressly excluded as a "common food crop," the defendants' alleged violations of state law relative to their ginseng trade cannot form the basis of a federal prosecution under the Lacey Act. The indictment against the defendants Lawrence McCullough and Mitchell McCullough must be, and hereby is, dismissed.

IT IS SO ORDERED.

### JUDGMENT ENTRY

For the reasons set forth in the Memorandum Opinion filed contemporaneously with this Judgment Entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that the indictment against defendants Lawrence McCullough and Mitchell McCullough is dismissed.

---

**8.** "Ginseng is the oldest herb in recorded history. More has been recorded about it than any other herb. The recorded historical health benefits are innumerable. Other countries have done serious research on ginseng and have made exciting discoveries they are not willing to share. In the past several years, ginseng has certainly got [sic] a 'bum rap' in our country. We are 'retarded' in this area of knowledge. Ginseng is a natural food herb.... In my opinion, there is absolutely nothing in the food line that has more health promoting nutrients than herbs which include American Ginseng!" *American Ginseng in America,* Docket No. 10, Exhibit F, p. 92.