COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, AtLee and Chaney
Argued at Fredericksburg, Virginia

DAVID JONES, ET AL.

v.      Record No. 1348-22-4

MINSUNG "JOSEPH" KIM

MEMORANDUM OPINION* BY
JUDGE VERNIDA R. CHANEY
SEPTEMBER 3, 2024

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David Bernhard, Judge

Gary B. Mims (Benjamin C. Charlton; Frei, Mims & Perushek, L.L.P.,
on briefs), for appellants.

J. Chapman Petersen (Won Y. Uh; Chap Petersen & Associates, PLC,
on brief), for appellee.

A jury found David and Barbara Jones (collectively, the Joneses) liable for compensatory and punitive damages after their dog attacked and injured Minsung "Joseph" Kim, who had come to their property while canvassing for a political campaign. On appeal, the Joneses assert the circuit court erred in dismissing their motions to strike on the grounds that they owed no legal duty to Kim, that their conduct was not willful or wanton, that the evidence was insufficient to show causation, and that Kim was contributorily negligent.

On review, this Court affirms the circuit court's judgment. The Joneses owed Kim both a duty of reasonable care and duty to not willfully or wantonly injure him, and there was sufficient evidence to support the jury's finding that the Joneses breached those duties and those breaches caused Kim's injuries. There was insufficient evidence to conclude that Kim was contributorily

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

negligent as a matter of law, which, in any event, would not protect the Joneses against liability for their wanton and willful conduct.

BACKGROUND

We recite the facts in the light most favorable to Kim, the prevailing party below. On November 5, 2019, Kim worked as a part-time political canvasser, visiting houses and conducting surveys. The Joneses were registered voters who lived in the neighborhood Kim was canvassing. Kim and a coworker drove to the Joneses' property, where an orange traffic cone blocked off the driveway. Kim's supervisor had warned him not to enter properties with "beware of dog" signs. However, because he and his coworker stopped at the traffic cone at the end of the driveway, Kim's view of the Joneses' yellow, three-foot high "beware of dog" sign was blocked, and Kim could not see the sign. There were no "no trespassing" signs forbidding entry or solicitation.

Kim was walking towards the Joneses' door and was halfway to the house when the Joneses' unrestrained dog jumped him, began attacking, and pulled him down. Kim wrestled with the dog, trying to escape for three to five minutes, after which Barbara Jones came, pulled the dog away, and told Kim to "get out." Kim left with torn clothing and injuries on his right arm, back, head, ear, left thigh, and left hand, which were later treated at a hospital and with plastic surgery.

Before the Joneses' dog attacked Kim, it had a history of eight recorded biting incidents. Six of these biting incidents involved visitors at the Joneses' property, and three occurred within the last year. The victims included delivery service employees, a home healthcare worker, and others, some of whom were expected guests and some whom were not. Prior to these biting incidents, the Joneses had set up an invisible electric fence around their property, put up a "beware of dog" sign, and placed an orange traffic cone at their driveway entrance. They made no further precautionary changes to their property or signage between the previous biting incidents and the attack on Kim. But the Joneses said they would put the dog away when they were expecting guests.

Kim sued the Joneses for negligence. During the jury trial, the Joneses moved to strike the evidence, arguing that they did not have a duty to make their property safe because Kim was a trespasser whom they did not know was on their property and because Kim was contributorily negligent by entering the property without looking for the "beware of dog" sign. The circuit court denied the motion. Following the Joneses' case in chief, they renewed their motion to strike, adding to their arguments that the evidence failed to establish how or why the dog was in the yard and that the evidence failed to prove that their conduct rose to the level of wanton and willful negligence. The circuit court denied the motion. After deliberation, the jury found the Joneses liable and awarded Kim $25,000 in compensatory damages and $20,000 in punitive damages.

On appeal, the Joneses argue that the circuit court erred by denying their motions to strike because Kim was either a trespasser or bare licensee[1] to whom they owed no duty of care, that he was contributorily negligent, and that their conduct was not wanton or willful. Thus, they maintain that Kim's negligence claim fails as a matter of law and, regardless, they should not be subject to punitive damages.

ANALYSIS

Analyzing the facts in the light most favorable to the prevailing party, this Court determines that a reasonable jury could have found Kim to be a licensee. Thus, the Joneses owed a duty to exercise reasonable care to protect against injuries by their dog. They also owed a duty to not wantonly or willfully injure Kim irrespective of his status as a licensee or trespasser. There was sufficient evidence to find that Kim's injuries were caused by the Joneses having breached these duties. There was insufficient evidence to establish contributory negligence as a matter of law, and

---

[1] The Joneses' assignments of error and headings call Kim a trespasser but argue the same liability standard applies even if Kim is a licensee.

even if there were, it would not diminish the Joneses' liability for wanton and willful conduct. Therefore, this Court finds the circuit court did not err in denying the Joneses' motions to strike.

## I.  Standard of Review

The Joneses assign error to the circuit court's denial of their motions to strike.  "'[A] motion to strike . . . tests whether [the plaintiff's] evidence is sufficient to prove [his case-in-chief].' . . . [I]f there is sufficient evidence to support a jury verdict in favor of the non-moving party, striking the evidence is inappropriate."  *Boyette v. Sprouse*, 79 Va. App. 558, 573 (2024) (first alteration in original) (quoting *Tahboub v. Thiagarajah*, 298 Va. 366, 371 (2020)).  Thus, we must look to the facts here.  As we do so, we must "view the evidence 'in the light most favorable to the non-moving party, and the non-moving party "must be given the benefit of all substantial conflict in the evidence, and all fair inferences that may be drawn therefrom."'"  *Id.* at 574 (quoting *Dill v. Kroger Ltd. P'ship I*, 300 Va. 99, 109 (2021)).

The Joneses, however, also claim that the circuit court erred as a matter of law.  This Court "reviews questions of law de novo, including those situations where there is a mixed question of law and fact."  *Taylor v. Northam*, 300 Va. 230, 250-51 (2021) (quoting *Napper v. ABM Janitorial Servs.-Mid Atl., Inc.*, 284 Va. 55, 61 (2012)).  "To establish actionable negligence, [Kim] had the burden to show the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage."  *Boyette*, 79 Va. App. at 574 (quoting *Atrium Unit Owners Ass'n v. King*, 266 Va. 288, 293 (2003)).

## II.  Trespasser or Licensee Status

The first matter to address is Kim's status as either a trespasser or licensee.  A possessor of land ordinarily owes trespassers a duty only to avoid causing injury through wanton and willful conduct but owes additional duties to licensees.  *See Lasley ex rel. Lasley v. Hylton*, 288 Va. 419, 424 (2014) (citing *Bradshaw v. Minter*, 206 Va. 450, 453 (1965)); *Pearson v. Canada Contr'g Co.*,

232 Va. 177, 185 n.6 (1986) (citing *Busch v. Gaglio*, 207 Va. 343, 348-49 (1966)); *see also* Code § 8.01-219.1(A). Whether a person is a licensee is ordinarily a question of fact for the jury. *Norfolk & W.R. Co. v. DeBoard's Adm'r*, 91 Va. 700, 702 (1895).

A person is generally not a trespasser when they use a path or driveway to approach, knock, or wait at someone's front door. *See Robinson v. Commonwealth*, 47 Va. App. 533, 545-46 (2006). Civil trespass has been described as either unlawfully entering the land of another or without consent from the possessor. *See Pearson*, 232 Va. at 182-83; *see generally* Charles E. Friend, *Personal Injury Law in Virginia* § 21.2(A)(2) (2023). Consent to enter, however, is not always explicit.

> [A]bsent any affirmative attempts to discourage trespassers, owners or possessors of private property impliedly consent to have members of the general public intrude upon certain, limited areas of their property. . . .
>
>    . . . .
>
> This invitation, where it exists, extends only to those areas of the property that would be used when approaching the residence in an ordinary attempt to speak with the occupants.

*Robinson*, 47 Va. App. at 545-46. A path to approach a landowner's front entry—without signage, fencing, or other means to discourage ingress—extends implicit consent and license to enter, knock, and wait for a reasonable period to speak with the occupants. *Id.* at 456; *Saal v. Commonwealth*, 72 Va. App. 413, 422-23 (2020).

The Joneses argue that the remoteness of their property should be considered, comparing their situation to a power company's uninhabited and mountainous land in *Appalachian Power Co. v. La Force*, 214 Va. 438, 438 (1974). Yet, at heart, entry onto a residential property, whether urban, suburban, or rural, on paths of ingress with the intent to knock and talk to the occupants vastly differs from entry onto remote, non-residential lands used for high voltage power transmission as in *Appalachian Power*. *See id.* at 439, 441.

- 5 -

Regardless of how many guests visited the Joneses' property, it was still a residence in suburban Fairfax County that saw occasional visitors and service workers, as shown through the six prior biting incidents. Barbara Jones even testified that she could see joggers and bicyclists on the street in the neighborhood. The Joneses had no visible fencing on the exterior property line, no "no trespassing" or "no entry" signs, and only an orange traffic cone on the driveway. The "beware of dog" sign alone does not withdraw the consent or license to approach. The orange traffic cone reasonably could have been interpreted to discourage vehicular traffic, not pedestrians. Kim and his supervisor acted accordingly, stopping the car at the end of the driveway, and not driving past the cone, whereafter Kim walked up to the front door.

Visits by political canvassers to residential properties are not uncommon and well within the scope where a stranger's general license to enter the land is presumed, comparable to "brush salesmen, newspaper boys, postmen, Girl Scout cookie sellers, distressed motorists, neighbors, [and] friends." *Robinson*, 47 Va. App. at 546 (quoting *Shaver v. Commonwealth*, 30 Va. App. 789, 796 (1999)). The Joneses could have reasonably expected Kim or another political canvasser to survey registered voters. The Joneses' dog bit Kim on November 5, when Kim and other campaign staffers were canvassing for the 2019 election.

A reasonable jury could have found that Kim, as a member of the public walking up to the front door and as a political canvasser surveying registered voters, was a licensee and not a trespasser.

### III. Duties Owed to Visitors

A possessor of land owes three basic duties to licensees. The first is the duty to exercise reasonable care arising from affirmative conduct. *See Bradshaw*, 206 Va. at 453. The second is the duty to avoid wantonly or willfully injuring the licensee. *See Appalachian Power*, 214 Va. at 441. A possessor of land also owes this duty to trespassers. *Id.* The third duty to licensees is the duty to

- 6 -

warn about latent dangers arising from conditions on the land. *See Busch*, 207 Va. at 348. As we can find clearly the Joneses owed the first two duties in this case for the reasons stated below, under the doctrine of judicial restraint, we do not determine whether the third duty to warn applies here. *See Commonwealth v. White*, 293 Va. 411, 419 (2017) ("[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015))).

### A. *Duty of Reasonable Care*

While the law may limit liability for injuries incurred on a landowner's premises due to natural or artificial conditions on the land, "in cases involving injury resulting from *active conduct,* as distinguished from conditions of the premises, the landowner or possessor may be liable for failure to exercise ordinary care towards a licensee whose presence on the land is known or should reasonably be known to the owner or possessor." *Bradshaw*, 206 Va. at 453-54 (quoting 2 Harper & James, *The Law of Torts* § 27.10, at 1475 (1956)).

Virginia law generally treats injuries from a landowner's animals as the result of affirmative conduct, not simply treating the animals as conditions on the land. *See id.* at 455 (holding that a landowner had a duty of ordinary care resulting from affirmative conduct in allowing a licensee to ride the landowner's horse); *see also Perlin v. Chappell*, 198 Va. 861, 864 (1957) (holding that an owner of domestic animals has "the duty to exercise ordinary care in the use and maintenance of his own property to prevent injury to others" (quoting *Rice v. Turner*, 191 Va. 601, 605 (1950))); *see also, e.g.*, *Panorama Resort v. Nichols*, 165 Va. 289, 296 (1935) (finding that a landowner had a duty of ordinary care relating to wild animals enclosed on the property); *Page v. Arnold*, 227 Va. 74, 80 (1984) (finding that a landowner had a duty of ordinary care when landowner's escaped horse collided with a vehicle); *Wilkins v. Sibley*, 205 Va. 171, 173 (1964) (same with mules); *Rice*, 191 Va. at 605-06 (same with cows).

- 7 -

Under this standard, the Joneses owed duty of reasonable care to Kim, a licensee. "[T]here is well-nigh universal agreement that the duty of care is owed to licensees whose presence is to be expected." *Bradshaw*, 206 Va. at 454 (quoting Harper et al., *supra*, at 1475).

The Joneses were aware of their dog's propensity to bite visitors. As Barbara Jones testified, the dog "had become overly protective" on their property. The Joneses also should have realized that merely keeping the dog in an invisible fence, in the expected path of ingress of their property, was an unreasonable risk to visitors. According to Barbara Jones, when they knew they had guests, they would keep the dog inside. Their knowledge of the dog's propensity to attack visitors put the Joneses on notice of injuries that could occur by leaving it outside and supplied a duty of reasonable care. *See Perlin*, 198 Va. at 865.

Finally, the Joneses argue they took some action that would put Kim on notice of the danger—their yellow "beware of dog" sign. But this sign did not prevent six previous biting incidents. Thus, it is sufficient for a reasonable jury to find that posting the sign alone was not "reasonable care" as even with the sign, visitors were regularly injured. *See, e.g.*, *Penske Truck Leasing Co., L.P. v. Dalton-McGrath*, 157 N.E.3d 5, 14-15 (Ind. Ct. App. 2020) ("[T]he presence of the 'Beware of Dog' sign was, without more, insufficient to impute notice to [the victim] of [the dog's] allegedly aggressive propensities or viciousness . . . ."); *Smedley v. Ellinwood*, 21 A.D.3d 676, 677 (N.Y. App. Div. 2005) (same); *Wright v. Morris*, 239 S.E.2d 225, 226 (Ga. Ct. App. 1977) ("[A 'beware of dog' sign] would tend merely to put third parties on notice that the premises contained a dog and does not in and of itself establish or tend to establish knowledge of the propensities of the resident animal.").

Therefore, as a matter of law, the Joneses had a duty of reasonable care to prevent Kim, a licensee, from injury from the dog. On the facts above, the jury could have reasonably found that

the Joneses failed to meet this duty, and thus, the circuit court's denial to strike on claims of no legal duty was correct.

### B. *Duty To Not Wantonly or Willfully Injure*

Next, we address the issue of wanton and willful negligence, which applies both to the existence of a duty and liability for punitive damages to which the Joneses also assign error. The Joneses cite *Appalachian Power*, which reiterates the traditional premise liability principle that an occupier owes no duty to trespassers or licensees to keep his premises safe for the licensee's use. *See* 214 Va. at 441. Even so, as *Appalachian Power* fully states:

> [s]peaking generally, *the duty owing by the owner "to a trespasser on his premises is to do him no intentional or wilful injury."* There must be such notice of the trespasser's danger as would put a prudent man on the alert before the duty of protection arises.
>
> So also with respect to a bare licensee . . . . "He takes upon himself all the ordinary risks attached to the place and the business carried on there." *The owner must not intentionally or wilfully injure him*, but he owes him the active duty of protection only after he knows of his danger, or might have known of it and avoided it by the use of ordinary care.

*Id.* (emphases added) (quoting *Lunsford's Adm'r v. Colonial Coal & Coke Co.*, 115 Va. 346, 348-49 (1913)). Thus, stating the principle more accurately, a landowner has a duty to not intentionally, wantonly, or willfully injure a trespasser or licensee. *See id.*

This was the duty that the circuit court considered in Jury Instruction 11:

> An occupant of premises has[:] a *duty . . . not to willfully or intentionally cause injury to a bare licensee*[; a] duty to protect the bare licensee if he knows, or reasonably should have known, of the bare licensee's danger, and could have avoided the danger by use of ordinary care.

> If an occupant fails to perform this duty, then he is negligent. An occupant of the premises has no duty to a bare licensee to keep his premises in a safe condition for the bare licensee's use.

(Emphasis added).[2]

Wanton and willful negligence is one of three degrees of negligence. In increasing order of severity, these degrees are "ordinary," "gross," "wanton and willful." *See Griffin v. Shively*, 227 Va. 317, 321 (1984); *Elliott v. Carter*, 292 Va. 618, 622 (2016). The Joneses were accused of wanton and willful negligence, which is "acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Curtis v. Highfill*, 298 Va. 499, 505 (2020) (quoting *Infant C. v. Boy Scouts of Am., Inc.*, 239 Va. 572, 581 (1990)). Wanton and willful negligence is distinguishable from ordinary and gross negligence through the defendants' awareness of their act and probable consequences. *Id.* at 506 (quoting *Infant C.*, 239 Va. at 581). The Joneses did not need to desire harm to Kim or otherwise act in "ill will," but they must have or should have realized that "'there [was] a strong probability that harm may result' from [their] actions." *Id.* (quoting *Infant C.*, 239 Va. at 582-83).

So long as reasonable persons could have found that the Joneses' conduct was wanton or willful, on the criteria discussed, the circuit court would have been correct in denying the motion to strike as to both the existence of a duty and consideration of punitive damages. *See Curtis*, 298 Va. at 507 ("If reasonable persons, upon the facts presented, could differ regarding whether the conduct in question was so willful and wanton as to show a conscious disregard for the rights of others, 'the trial court may not remove the issue of punitive damages from the jury's consideration.'" (quoting *PGI, Inc. v. Rathe Prods., Inc.*, 265 Va. 334, 346 (2003))).

---

[2] Jury Instruction 11 was derived from Civil Model Jury Instruction No. 23.090, which supports the use of either "trespasser" or "bare licensee."

The jury could have reasonably found that after repeated biting incidents, the Joneses took no action to prevent further injury to visitors approaching their house. The Joneses were aware their dog was protective and had attacked those within the zone of the electric fence. Thus, a jury could have reasonably found that the Joneses consciously disregarded the rights of others by willfully and wantonly allowing the dog to roam the premises and attack visitors.

The Joneses stress that they owe "no duty of prevision" to either trespassers or licensees. *See Appalachian Power*, 214 Va. at 441. No prevision was required here. The likelihood of visitors to the premises was a virtual certainty, as the Joneses plainly foresaw, and they had actual notice that their dog was a threat to those who entered the premises.

The Joneses also argue that Barbara Jones's act of pulling the dog off Kim shows a degree of care that defeats a showing of willful and wanton negligence as a matter of law, drawing a parallel to the rescue attempt in *Elliott*, 292 Va. at 622-23. In *Elliott*, Caleb, a Boy Scout, drowned when he slipped off a sandbar into deeper water. *Id.* at 620-21. Carter, a peer leader of the Boy Scout troop who had journeyed out to the sandbar but started to return earlier, doubled back to try to save Caleb but failed. *Id.* The rescue attempt was cited as an illustration of some level of care, defeating gross negligence, which would also defeat willful and wanton negligence as a matter of law. *See id.* at 622-23.

Yet the facts here are significantly distinguishable from *Elliott*. There, the Supreme Court reasoned that Carter was unaware of the danger of the sandbar until it manifested. *Id.* at 623. Once it did, Carter acted. *Id.* Thus, the defendant exercised some degree of care upon discovering the danger, thereby defeating the claim of wanton and willful negligence.

Here, however, the Joneses failed to act long after the danger was already apparent to them. Given that at least six visitors to their property suffered harm from their dog, a reasonable juror could find that the Joneses were aware of or should have anticipated that future guests could be

injured and that their failure to take further protective measures after each incident was a conscious disregard for the rights of others. Thus, the circuit court was correct to deny the motion to strike and allowing the matter of wanton and willful conduct to be decided by a jury.

## IV. Causation

The Joneses challenge as insufficient the evidence of any causal connection between their conduct and their dog making it out to the yard. Unless reasonable people cannot differ, "the issue of proximate causation is a question of fact to be resolved by a jury." *RGR, LLC v. Settle*, 288 Va. 260, 292-93 (2014). The negligent proximate cause of an injury is "an act or omission which, in natural and continuous sequence, unbroken by an intervening cause, produces [an injury], and without which that [injury] would not have occurred." *Id.* at 292 (quoting *Ford Motor Co. v. Boomer*, 285 Va. 141, 150 (2013)).

The Joneses argue the facts are similar to *Page v. Arnold*, where the defendant's pony had escaped its enclosure and collided with a vehicle on a highway. 227 Va. at 76. Yet, these cases are distinguishable. In *Page*, there was an issue as to what act allowed the 18-month-old pony to escape the enclosure where it was contained. *Id.* at 77-78. There was no evidence of tampering, and the question presented before the jury was whether it was "possible" for the pony to have jumped the fence. *Id.* at 78. The Supreme Court, however, found that "[p]roof of 'possibility' that a fact exists is not enough to take the issue out of the sphere of pure conjecture and rank speculation into the realm of legitimate inference, sufficient for a jury to be permitted to consider the question." *Id.* at 79.

However, here, there is no dispute over whether it was merely "possible" for the dog to be out in the yard within the invisible fence. We know that the Joneses allowed the dog to be in the yard, and the Joneses would put the dog away when they expected guests. The dog, allowed in the outer yard, attacked Kim as he approached the front door. A reasonable jury could find that

- 12 -

allowing the dog outside is an act that, in sequence, led to the dog injuring Kim. *See RGR*, 288 Va. at 292 (defining proximate causation). The circuit court did not err in letting this question of causation go to the jury.

## V. Contributory Negligence

If the Joneses were held liable, they argue that Kim was contributorily negligent and thus his claims were barred as a matter of law. "Contributory negligence is an affirmative defense that must be proved according to an objective standard whether [Kim] failed to act as a reasonable person would have acted for his own safety under the circumstances." *Jenkins v. Pyles*, 269 Va. 383, 388 (2005). As with negligence, contributory negligence is generally an issue of fact to be determined by the factfinder. *Id.* at 389; *see Bradshaw*, 206 Va. at 455 (finding that "it was for the jury to say whether the [licensee] was guilty of contributory negligence" in riding the landowner's horse). The circuit court could only accept the Joneses' motion to strike if "reasonable minds could not differ" that Kim was contributorily negligent, making it a matter of law. *Jenkins*, 269 Va. at 389. Yet the Joneses failed to reach this standard for two reasons.

First, under the facts, a jury could have found that Kim acted as a reasonable person would for his own safety. Kim did not see the sign and had no reason to suspect that entering the property and approaching the front door posed any danger.

The Joneses emphasize that Kim was warned not to enter properties with a "beware of dog" sign, and therefore failing to check for the sign on their property was careless and sufficient for contributory negligence. Yet Virginia law does not place a general duty on visitors to search for warning signs when entering a residential property. Again, Kim, approaching the front porch on an unenclosed portion of the property but for an orange cone in the driveway, had no reason to suspect unreasonable danger without seeing the sign. Thus, reasonable minds could differ regarding whether Kim was contributorily negligent.

Second, ordinary contributory negligence is not a defense against wanton and willful negligence. *Wolfe v. Baube*, 241 Va. 462, 465 (1991). If the jury could reasonably find that the Joneses were wantonly or willfully negligent, the Joneses would need sufficient evidence to demonstrate that Kim, too, was wanton or willful in his contributory negligence. *Id.* (citing *Griffin*, 227 Va. at 322). Therefore, even if, as a matter of law, Kim was negligent by not seeking out warning signs, this negligence would need to be "with reckless indifference to the consequences, with [Kim] aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury." *Curtis*, 298 Va. at 505 (quoting *Infant C.*, 239 Va. at 581). No such argument was presented, and no facts suggest that Kim was aware of any circumstances posing a threat of injury.

Ultimately, a reasonable jury could and did absolve Kim of the lesser standard. The circuit court did not err in leaving this factual determination to the jury.

CONCLUSION

We hold that the Joneses owed Kim a duty of reasonable care and a duty to not wantonly or willfully injure Kim when he entered their property. The facts established at trial were sufficient to find that the Joneses did not meet these duties, the Joneses caused Kim's injuries, Kim was not contributorily negligent, and the Joneses were wanton and willful in their conduct. For these reasons, this Court affirms the circuit court's judgment.

*Affirmed.*